UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KALVIN N. CRAVEN,

Petitioner,

v.

JIM ROBERTSON, Warden,

Respondent.

Case No. 20-cv-01933-SI (pr)

**ORDER LIFTING STAY; AND REQUESTING FURTHER BRIEFING**

Re: Dkt. Nos. 38, 50

Before the Court is petitioner's *pro se* motions to lift the stay in this habeas action, which has been stayed and administratively closed since May 6, 2021.  Dkt. Nos. 38, 50.  On June 9, 2021, petitioner filed an amended petition.  Dkt. No. 39.  More recently, petitioner has filed a motion to withdraw his amended petition, which will be construed as a motion for leave to amend the petition and to submit his "perfected amended petition that is fully exhausted removing three [ineffective assistance of counsel ('IAC')] issues."  Dkt. No. 50.  Attached to petitioner's most recent filing is his "perfected" amended petition, which will be construed as the second amended petition ("SAP").  *Id.* at 2-53.  Responded opposes petitioner's motion for leave to file his SAP on the grounds that the newly exhausted claims are time barred.  Dkt. No. 51, 54.

For the reasons explained below, the Court GRANTS petitioner's motions to lift the stay, and it will require more briefing as to his motion for leave to file his SAP.

**BACKGROUND**

The original petition provides the following information: After a jury trial in Alameda County Superior Court, petitioner was found guilty of four counts of robbery and was found to have

United States District Court
Northern District of California

personally used a firearm in the commission of the offenses.  He was resentenced on June 29, 2018, to a prison term of 28 years.

Petitioner appealed.  The California Court of Appeal affirmed the conviction in 2018, and the California Supreme Court denied his petition for review on January 29, 2020.  He also filed multiple state habeas petitions in the Alameda County Superior Court that were denied in 2020.

He then filed the instant federal habeas action on March 19, 2020.  His original petition has a proof of service stating that he mailed it to the Court on March 11, 2020.  The petition was stamped "filed" on March 19, 2020.  As a *pro se* petitioner, petitioner receives the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to a court.  *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).  The original petition is deemed filed as of March 11, 2020.  Petitioner alleged three claims:  (1) the trial court's evidentiary ruling admitting videos from his cell phone violated due process; (2) the trial court violated his constitutional rights by engaging in "ex parte" communications with jurors during deliberations and by failing to answer a jury question about a sentence enhancement allegation; and (3) IAC claim based on trial counsel's failure to move to suppress videos obtained from petitioner's cell phone without a warrant.  *See* Dkt. No. 1.

On April 14, 2020, the Court found that, liberally construed, these claims were cognizable in a federal habeas action and warranted a response.  Dkt. 7 at 2.

Thereafter, petitioner moved to supplement his federal habeas petition with further argument in support of his claim that his right to due process was violated by the erroneous admission of two cell phone videos.  Dkt. No. 10.

On June 5, 2020, the Court granted petitioner's motion to supplement.  Dkt. No. 11.  The Court noted that it would consider the supplemental argument when it came time to rule upon the habeas petition.  The Court added that because the supplement contained only further argument in support of an existing claim, there would be no need to adjust the briefing schedule.

On July 17, 2020, respondent filed a response to the petition and to petitioner's request to supplement the petition.  Dkt. Nos. 13, 14.

On October 13, 2020, petitioner retained Richard B. Mazer to represent him in this action.  Dkt. No. 18.

2

1    After requesting several extensions of time to do so, petitioner's counsel filed a traverse on

2  March 12, 2021.  Dkt. No. 27.

3    On March 12, March 23, and March 24, 2021, petitioner's counsel filed motions seeking to

4  amend the petition to assert a number of new, unexhausted claims alleging IAC and cumulative

5  error claims.  Dkt. Nos. 28-30.  On April 12, 2021, respondent filed an opposition to petitioner's

6  request to amend the petition.  Dkt. No. 32.

7    On May 4, 2021, the Court denied petitioner's motion to amend the petition because it could

8  not consider unexhausted claims and, thus, it determined that amendment of the petition would be

9  futile.  Dkt. No. 33 at 2.  The Court further added that "[i]f petitioner has filed a new state habeas

10 petition, petitioner shall notify the Court no later than May 14, 2021, and shall attach a copy of the

11 state habeas petition." *Id.* at 2-3.

12   Thereafter, petitioner's then counsel, Mr. Mazer, informed the Court that on April 27, 2021,

13 he filed another state habeas petition in the state superior court seeking to exhaust a number of new

14 claims.[1]  Dkt. No. 34.

15   As such, on May 6, 2021, the Court found it appropriate to sua sponte stay and abey this

16 petition.  Dkt. No. 35 at 1 (citing *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005)).  The action was

17 stayed and administratively closed.  *Id.*  The Court further noted that it made "no finding at this time

18 as to the timeliness of the currently unexhausted claims."  Dkt. No. 35 at 1.

19   On June 9, 2021, petitioner filed a motion to lift the stay along with an amended petition.

20 Dkt. Nos. 38, 39.  His amended petition has a proof of service stating that he mailed it to the Court

21 on June 6, 2021.  The petition was stamped "filed" on June 9, 2021.  Because petitioner receives the

22 benefit of the prisoner mailbox rule, the amended petition is deemed filed as of June 6, 2021.  *See*

23 *Stillman*, 319 F.3d at 1201.  In his amended petition, petitioner lists eight IAC claims and a claim

24 of cumulative error.  Dkt. No. 39.  Specifically, petitioner alleged the following IAC claims based

25 on trial counsel's failure: (1) to object to Officer Mullen's testimony regarding his identification of

26 petitioner; (2) to object to testimony by Officer Mullins, who had arrested plaintiff, and to

27

28 _____

[1] Petitioner subsequently alerted the Court of his intent to abandon this state collateral proceeding.  Dkt. No. 48.

3

United States District Court
Northern District of California

identification testimony by Officer Bergeron; (3) to be present during the readbacks of testimony requested by the jury during deliberation; (4) not to strike a biased juror who was seated on the jury; (5) to file a motion to suppress petitioner's identification at the lineup; (6) to request an opportunity to explain petitioner's absence at trial; (7) to object to the introduction of enhanced surveillance video, which lacked foundation; and (8) to conduct proper cross-examination of Officer Mullens. Dkt. No. 39 at 2-7.  Lastly, petitioner alleged that the cumulative effect of trial counsel's deficient performance denied him the right to a fair trial.  *Id.* at 9.

On June 11, 2021, Mr. Mazer filed a motion to withdraw as petitioner's attorney.  Dkt. No. 36.

On June 28, 2021, the Court granted petitioner's motion requesting that the Court reinstate his *pro per* status, and also granted Mr. Mazer's motion to withdraw.  Dkt. No. 43.  The Court deferred ruling on the motion to lift the stay and the propriety of the amended petition until it received further information about whether petitioner intended to pursue the pending state court habeas petition filed by Mr. Mazer on April 27, 2021.[2]  *Id.* at 1.

Thereafter, the Court received information about the status of the state habeas proceedings from Mr. Mazer and petitioner.  Dkt. Nos. 46, 47, 48.  Petitioner informed the Court that he wished to pursue his state habeas petition filed in the California Supreme Court on September 7, 2021, in which he was attempting to exhaust his IAC claims.  *See id.*  Petitioner requested that the Court continue to defer ruling on his motion to lift the stay until he received a ruling from the California Supreme Court.  Dkt. 48 at 1.

On December 17, 2021, petitioner informed the Court that the California Supreme Court had denied his state habeas petition on November 23, 2021.  Dkt. No. 49.  He then filed another motion entitled, "Motion to Lift the Court's Stay, and Motion to Withdraw 6/09/2021 Amended Petition, to Submit Perfected Amended Petition That Is Fully Exhausted Removing Three IAC Issues," which will be construed as a motion for leave to file his SAP.  Dkt. 50.  As mentioned, attached to this motion is petitioner's SAP.  *Id.* at 2-53.  His SAP has a proof of service stating that he mailed it to

---

[2] The April 27, 2021 state habeas petition was signed by petitioner and filed with the state superior court on the same date.

the Court on December 14, 2021.  The petition was stamped "filed" on December 18, 2021.  Because petitioner receives the benefit of the prisoner mailbox rule, the SAP is deemed filed as of December 14, 2021.  *See Stillman*, 319 F.3d at 1201.  The SAP alleges the newly exhausted claims, including his cumulative error claim and his IAC claims based on trial counsel's failure: (1) to object to testimony by Officer Mullins, who had arrested plaintiff, and to identification testimony by Officer Bergeron; (2) to file a motion to suppress petitioner's identification at the lineup; (3) to request an opportunity to explain petitioner's absence at trial; (4) to object to the introduction of enhanced surveillance video, which lacked foundation; and (5) to conduct proper cross-examination of Officer Mullins.[3]  Dkt. No. 50-1 at 2-52.

Respondent has filed an opposition to petitioner's motion for leave to file his SAP.  Dkt. No. 51.  Petitioner has filed a reply to the opposition.  Dkt. No. 53.  Respondent has filed a document entitled, "Reply to Petitioner's Claimed Tolling."  Dkt. No. 54.

## DISCUSSION

### A.    Lifting The Stay

As mentioned above, petitioner had requested that the action be stayed so that he could exhaust state court remedies as to his IAC claims    The Court granted the stay, and informed petitioner that he should move to reopen the action and lift the stay after he completed his efforts to exhaust state court remedies.  Petitioner has moved to reopen the action and to lift the stay.  Dkt. Nos. 38, 50.  In the more recently-filed motion to lift the stay, he reports that he has exhausted his state court remedies and is ready to proceed with consideration of his claims for habeas relief, including his newly exhausted IAC and cumulative error claims.

Upon due consideration, the Court GRANTS petitioner's motions to lift the stay.  Dkt. Nos. 38, 50.  The stay is lifted.  The Clerk of the Court will reopen this action that had been closed administratively.

---

[3] The Court notes that petitioner "remov[ed] three of the IAC issues" he initially listed in his amended petition.  *See* Dkt. No. 50 at 1; *compare* Dkt. No. 39 at 2-7 *with* Dkt. No. 50-1 at 2-52.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**B.     Review of Motion for Leave to File SAP and Timeliness/Relation-Back Issues**

Having lifted the stay, the court now considers petitioner's motion for leave to file his SAP as well as respondent's arguments in opposition to the motion.  Dkt. Nos. 50, 51, 54.

Petitioner moves to add his five IAC claims and cumulative error claim to the three claims alleged in the original petition.  Dkt. No. 50.  Respondent opposes the motion.  Dkt. No. 51.  Respondent argues that the amendment should not be permitted because the newly exhausted claims do not relate back to the claims in the original petition, and they were not filed within the one-year limitations period.  *Id.* at 1.  Specifically, respondent states that "[w]ith respect to the newly exhausted claims, the federal statute of limitations has long since expired . . . [and] [p]etitioner's newly exhausted claims are time barred." *Id.* (citing 28 U.S.C. § 2244(d)).  Respondent adds that "[t]he requested amendment here is futile because the Court cannot grant relief on untimely claims." *Id.* at 2.  Respondent also claims that petitioner is "entitled to no tolling from untimely state habeas petitions." *Id.*  And, respondent also argues that petitioner's new federal claims "do not relate back to the original petition for review filed in the California Supreme Court." *Id.*

In his reply, petitioner asserts that he is entitled to tolling from the filing of "several timely habeas petitions in state court, which entitled petitioner time to toll." Dkt. No. 53 at 1.  In essence, he is claiming that he is entitled to statutory tolling from the filing of his state habeas petitions in state courts.  *Id.*

Respondent filed his "Reply to Petitioner's Claimed Tolling."  Dkt. No. 54.  Respondent "agrees that petitioner is entitled to some tolling, but not enough to keep the limitations period from fully running out."  *Id.* at 2.

Each newly exhausted claim can survive only if it (a) was filed within the limitations period, or (b) relates back to the original and timely petition, and the Court analyzes both matters below.

**1.     Timeliness**

As mentioned above, respondent argues that the newly exhausted claims in the SAP are time-barred.  Dkt. No. 51 at 2; Dkt. No. 54 at 2.  Respondent does not dispute that petitioner's original three claims in the original petition are timely because they were filed before the limitations period

expired. Respondent argues that newly exhausted claims are time-barred because "the federal statute of limitation had long since expired when petitioner's exhaustion petition was filed in the California Supreme Court." Dkt. No. 54 at 2.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a state prisoner to file a petition for federal habeas corpus relief within one year of the occurrence of several events, the only event relevant to this action being "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d). The purpose of this requirement is to further the interest in finality of state court judgments by ensuring rapid federal review of constitutional challenges. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001). "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999); *see Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final ninety days after the California Supreme Court denied review).

Here, the California Supreme Court denied the petition for review on January 29, 2020, and petitioner had ninety days from that date to file a petition for writ of certiorari in the U.S. Supreme Court. He did not file a petition for writ of certiorari. His conviction therefore became final on April 28, 2020, when the time for him to file a petition for writ of certiorari expired. Without the benefit of any tolling, petitioner's presumptive federal habeas deadline was April 28, 2021, one year from that date.

The Court notes that the original petition, deemed filed on March 11, 2020, was filed *prior to* the start of the one-year limitations period. The record shows that petitioner also filed many state habeas petitions. Petitioner has presented a denial order from the Alameda County Superior Court dated June 3, 2020. *See* Dkt. No. 53 at 3. In that denial, the state superior court indicated that petitioner filed three state habeas petitions on December 12, 2019, December 23, 2019, and March 23, 2020, as well as a supplemental state habeas petition on April 28, 2020.[4] *Id.* The June 3, 2020,

---

[4] The record does not include hard copies of the three state habeas petitions or the supplemental filing, and the Court is not able to determine whether the mailbox rule applies. Thus,

United States District Court
Northern District of California

1    denial order addressed the "all three petitions and the supplemental filing." *Id.*

2         Almost eleven months later (327 days), on April 27, 2021, petitioner's former attorney, Mr.

3    Mazer, filed a fourth state habeas petition in the state superior court. Dkt. No. 47 at 1.  On May 4,

4    2021, the state superior court denied that habeas petition.  Dkt. No. 47 at 5.

5         Petitioner then filed his amended petition, which was deemed filed on June 6, 2021.  Dkt.

6    39.

7         Three months later, petitioner filed his state habeas petition (exhausting the claims in the

8    SAP) in the California Supreme Court on September 7, 2021, and the state supreme court denied it

9    on November 23, 2021.  Dkt. No. 49.

10        Less than two weeks later, petitioner filed his SAP, which was deemed filed on December

11   4, 2021.  Dkt. 50 at 2-53.

12        Statutory tolling is available for the time petitioner spent pursuing state collateral relief.  The

13   time during which a properly filed application for state post-conviction or other collateral review is

14   pending is excluded from the one-year limitations period.  28 U.S.C. § 2244(d)(2).  An application

15   for collateral review is "pending" in state court "as long as the ordinary state collateral review

16   process is 'in continuance'"—i.e., until the completion of that process.  *Carey v. Saffold*, 536 U.S.

17   214, 219-20 (2002).  In other words, until the application has achieved final resolution through the

18   state's post-conviction procedures, by definition it remains "pending."  *Id.* at 220.  In California,

19   this means that the statute of limitations is tolled from the time the first state habeas petition is filed

20   until the California Supreme Court rejects the petitioner's final collateral challenge, as long as the

21   petitioner did not "unreasonably delay" in seeking review.  *Id.* at 221-23; *Biggs v. Duncan*, 339 F.3d

22   1045, 1048 (9th Cir. 2003); *accord Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), *overruled*

23   *on other grounds by Harris v. Carter*, 515 F.3d 1051, 1053 (9th Cir. 2008).  *Nino* concluded that

24   the limitations period "remains tolled during the intervals between the state court's disposition of a

25   state habeas petition and the filing of a petition *at the next state appellate level*."  *Nino*, 183 F.3d at

26   1005 (emphasis added).  This is true even if the contents of the petitions change, *Delhomme v.*

27

28   _____

the only dates that can be considered are the filing dates.

*Ramirez*, 340 F.3d 817, 819-20 (9th Cir. 2003) *abrogated on other grounds by Evans v. Chavis*, 546 U.S. 189 (2006), or if the petitioner files additional or overlapping petitions before the first full round of review is complete, *Delhomme*, 340 F.3d at 820.  However, if there is any gap between the completion of one round of review and the commencement of another round of state habeas review, the petitioner is not entitled to tolling during the gap.  *See id.* at 821; *Biggs*, 339 F.3d at 1046-48.

First, the limitations period will not be tolled based on the three state habeas petitions filed *prior to* the start of the limitations period (i.e., the state habeas petitions filed on December 12, 2019, December 23, 2019, and March 23, 2020).  That petitioner filed a federal habeas action in this Court does not compel a different result.  In any event, it is well-established that an application for federal habeas review is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2).  *Walker*, 533 U.S. at 180-81.

Respondent does not dispute that the federal petition that has been deemed filed on March 11, 2020 was timely filed, and that at the time of filing there were 365 days remaining in the limitations period because it had not yet stated running.  As mentioned above, the limitations period should have begun to run on April 28, 2020.  While the current federal petition was pending, petitioner filed multiple state habeas petitions in order to exhaust his unexhausted claims.  Thus, the issue is whether the newly exhausted claims are timely.

Petitioner filed his supplemental state habeas petition on April 28, 2020—the same day the limitations period would have begun to run.  Thus, the statute of limitations would have been tolled from April 28, 2020 through June 3, 2020 (37 days), when the state superior court denied his three state habeas petitions and supplemental filing.

However, petitioner would not have been entitled to statutory tolling during the 327-day period between the state superior court's denial on June 3, 2020 and the filing of his fourth state habeas petition in the Alameda County Superior Court on April 27, 2021.  A mentioned above, the Ninth Circuit concluded that the limitations period only remains tolled during the intervals between the state court's denial and the filing of a petition "*at the next state appellate level.*"  *Nino*, 183 F.3d at 1005 (emphasis added).  Here, petitioner filed multiple state habeas petitions at the state superior court level.  Therefore, he not eligible for statutory tolling of the limitations period during the gap

9

between the state habeas petitions filed at the same level court.  *See Delhomme*, 340 F.3d at 821; *Biggs*, 339 F.3d at 1046-47, 1048; *see also Dils v. Small*, 260 F.3d 984, 986 (9th Cir. 2001) (not tolling limitations period during gap between successive state habeas petitions filed in the state's highest court); *Smith v. Duncan*, 297 F.3d 809, 814-15 (9th Cir. 2002), *overruled on other grounds by Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005), (when calculating tolling period, excluding gap between first set of state habeas petitions (superior court, court of appeal and supreme court) and second set of state habeas petitions (superior court, court of appeal and supreme court)).  Thus, the limitations period would have begun to run on June 4, 2020, the day after the state superior court's June 3, 2020 denial.  He would have then had 365 days to file newly exhausted claims before the limitations period would have expired on June 4, 2021.  He did not do so.  Instead, he filed his SAP, which was deemed filed on December 14, 2021.  However, as mentioned, petitioner was attempting to exhaust his state court remedies as to his new claims, and thus, he filed a fourth state habeas petition in the state superior court on April 27, 2021, which is *before* the June 4, 2021 expiration date.  At the time he filed his state habeas petition on April 27, 2021, petitioner only had 38 days (365 days minus 327 days that had run) left on his statute of limitations.  The limitations period could be tolled from April 27, 2021 through May 4, 2021 (8 days), the date the state superior court denied his fourth state habeas petition.  Then, the limitations period began to run again on May 5, 2021, and petitioner only had 38 days before the limitations period expired on June 12, 2021, which is a Saturday, so the expiration date will be moved to the next business day—June 14, 2021.[5]  Any state habeas petitions petitioner filed *after* June 14, 2021 have no tolling effect because they were filed after the limitations period expired.  "Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."  *Rashid v. Kuhlmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998).  Specifically, petitioner's state habeas petition filed in the state supreme court on September 7, 2021 could not revive the limitations period.  *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed).

---

[5] The Court notes that respondent's calculations resulted in the same expiration date of the limitations period—June 14, 2021.  *See* Dkt. No. 54 at 2.

1    Therefore, the newly exhausted claims deemed filed in the SAP on December 14, 2021 are untimely,

2    having been filed outside AEDPA's limitations period, even when statutory tolling is taken into

3    account.

4        Lastly, petitioner does not specifically claim that he is entitled to equitable tolling.  *See* Dkt.

5    No. 53.  Even if the Court construed his statement that he is entitled to "time to toll" as one related

6    to equitable tolling, he provides no reasons in support.  *Id*. at 1.  Without supporting reasons, he has

7    not shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

8    circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649

9    (2010) (quoting *Pace*, 544 U.S. at 418).  Thus, he is not entitled to any equitable tolling.

10

11            **2.        Relation Back**

12       The second matter to decide is whether the newly exhausted claims relate back to the original

13   petition because, if they do, they would be timely as the original petition was timely.  Respondent

14   argues that they do not relate back to the claims in the original petition. Dkt. No. 51 at 2.

15       Claims that are first presented in an amended petition filed after the one-year statute of

16   limitations has expired relate back to the date of the original pleading only if the original and

17   amended pleadings "'ar[i]se out of the conduct, transaction, or occurrence.'" *Mayle v. Felix*, 545

18   U.S. 644, 655 (2005) (alteration in original) (quoting Fed. R. Civ. P. 15(c)(2)).  "An amended habeas

19   petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts

20   a new ground for relief supported by facts that differ in both time and type from those the original

21   pleading set forth." *Id*. at 650 (new coerced confession claim did not relate back to the original

22   petition that raised only a factually distinct Confrontation Clause claim).  *Mayle* explicitly rejected

23   the proposition that the "same 'conduct, transaction, or occurrence' [means] same 'trial,

24   conviction, or sentence.'" *Id*. at 664.  Only if the original and amended petitions state claims that

25   are tied to a common core of operative facts will the new claim in an amended petition relate back

26   to the filing date of the original petition.  *See id*. at 664-65.  *Compare Rhoades v. Henry,* 598 F.3d

27   511, 519-20 (9th Cir. 2010) (district court properly denied leave to amend petition to add claims

28   arising out of alleged misconduct of prosecutors in another case against defendant based on FBI lab

United States District Court
Northern District of California

11

testing because those claims did not relate back to other timely-filed claims about police questioning at time of arrest, jailhouse informant testimony, and judicial bias), *and Hebner v. McGrath*, 543 F.3d 1133, 1138-39 (9th Cir. 2008) (district court did not err by denying leave to amend petition where original claim challenged admission of evidence at trial and new claim challenged jury instruction concerning consideration of that evidence; they were two discrete occurrences dependent upon separate transactions not sharing common core of operative facts), *with Valdovinos v. McGrath*, 598 F.3d 568, 575 (9th Cir. 2010), *judgment vacated on other grounds*, *Horel v. Valdovinos*, 562 U.S. 1196 (2011) (*Brady* claim in amended petition related back to *Brady* claim in original petition where revision added newly discovered evidence that had not been disclosed by prosecutor; both original and amended claims were "of the same type" in that both pertained to suppressed exculpatory evidence government had in its file), and *id.* at 575-76 (IAC claim in amended petition related back to IAC claim in original petition where both claims pertained to counsel's alleged failure to adequately investigate suppressed exculpatory evidence upon learning of it and amended claim "simply adds more evidence that counsel did not uncover").

Upon comparing the newly exhausted claims in the SAP with the claims in the original petition, the Court concludes that the newly exhausted claims do not relate back because they do not arise out of the same "conduct, transaction, or occurrence" as any of the three claims in the original petition. The claims in the original petition have no common core of operative facts with the IAC or cumulative error claims in the SAP. Specifically, the newly exhausted IAC claims do not pertain to the original IAC relating to counsel's failure to move to suppress videos obtained from petitioner's cell phone without a warrant. Also, the newly exhausted IAC claims are not the ineffective assistance of trial counsel overlay to another claim asserted in the original petition; they are *separate* legal claims and depend on *separate* evidence. Unlike *Valdovinos*, petitioner's SAP does not present "more evidence" of counsel's ineffectiveness relating to counsel's failure to move to suppress videos obtained from petitioner's cell phone. And, unlike *Valdovinos*, nothing in the original petition put respondent on notice in petitioner's case that there would be additional IAC claims. Therefore, the SAP here seeks to present an analytically distinct claim from anything in the original petition, rather than to buttress the existing IAC claim.

There is, however, one consideration for which the Court will require further briefing.  As the Court noted above, the statute of limitations expired on June 14, 2021, but the record shows that the amended petition was deemed filed as of June 6, 2021.  Thus, the amended petition was filed *before* the limitations period expired.  Moreover, the amended petition, which petitioner filed along with his first motion to lift the stay, raised similar claims as those raised in the SAP, including the IAC and cumulative error claims.  It is not clear whether the appearance of these claims in a prior timely amended petition (that had accompanied petitioner's earlier motion to lift the stay) is sufficient for relation back purposes.  Respondent did not consider whether the appearance of the IAC and cumulative error claims in petitioner's amended petition is sufficient for relation back purposes.  *See* Dkt. Nos. 51, 54.

These three cases may provide some guidance to the Court and the parties:  *Duncan v. Walker*, 533 U.S. 167 (2001); *Green v. White*, 223 F.3d 1001, 1003 (9th Cir. 2000); and *Zarvela v. Artuz*, 254 F.3d 374 (2nd Cir. 2001).  In *Green*, the petitioner voluntarily dismissed his petition in order to exhaust state remedies, which terminated the litigation.  223 F.3d at 1002-03.  After Green exhausted his claims, he filed a federal habeas petition, which the district court dismissed as untimely, AEDPA's limitations period having expired, and the claims did not relate back to any timely pending petition.  *Id.* at 1002.  The Ninth Circuit affirmed:

> A second habeas petition does not relate back to a first habeas petition when the first habeas petition was dismissed for failure to exhaust state remedies. When the present petition was filed, there was no pending petition to which the new petition could relate back or amend.  Therefore, Green's present petition does not relate back to his earlier petition that was dismissed.

*Id.* at 1003 (quotation marks and citations omitted).  However, *Green*'s holding is based in part on the fact that Green's prior petition was dismissed and the habeas proceedings terminated, which is not the case here.  This Court has had *continuous* jurisdiction from when the original petition was initially deemed filed on March 11, 2020, when this action was stayed on May 6, 2021, and when the amended petition and the SAP were deemed filed on June 6, 2021 and December 14, 2021, respectively.  Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition.  In a concurring opinion in *Walker*, Justice Stevens, joined by Justice Souter, stated that:

although the Court's pre-AEDPA decision in *Rose v. Lundy*, [455 U.S. 509 (1982)], prescribed the dismissal of federal habeas corpus petitions containing unexhausted claims, in our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies. Indeed, there is every reason to do so when AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims, *see* 28 U.S.C. § 2254(b)(2) (1994 ed., Supp. V), and when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of AEDPA's 1-year limitations period.

533 U.S. at 182-83 (Stevens, J., concurring). Lastly, in *Zarvela*, the Second Circuit recognized that the purpose of AEDPA's limitations period is to further the goal of finality by avoiding endless delay in deciding constitutional challenges to a conviction. *See* 254 F.3d at 381. However, the *Zarvela* court found that "the concern about excessive delays in seeking exhaustion and in returning to federal court after exhaustion can easily be dispelled by allowing a habeas petitioner no more than reasonable intervals of time to present his claims to the state courts and to return to federal court after exhaustion." *Id.*

Again, the parties have not briefed the issue as to whether the appearance of the newly exhausted claims in a prior timely petition—the amended petition—is sufficient for relation back purposes. The Court will require further briefing on this issue before it can decide whether the newly exhausted claims can survive through the relation-back doctrine, as directed below.

## CONCLUSION

For the foregoing reasons,

1.      Petitioner's motions to lift the stay is GRANTED. Dkt. Nos. 38, 50. The stay is lifted. The Clerk shall reopen this action that had been closed administratively. Petitioner's motion to "withdraw" the amended petition, which has been construed as a motion for leave to file his SAP, will remain as pending while the parties file more briefing. *See* Dkt. No. 50.

2.      No later than **March 18, 2022**, respondent shall either file: (i) a supplement to their "Opposition to Petitioner's Renewed Motion to Amend the Petition" (Dkt. No. 51), with the additional requested briefing and whatever other procedural matters respondent wishes to raise; or (ii) an indication that respondent declines to file such a supplement, and would ask the Court to grant petitioner leave to file his SAP, and set a briefing schedule for the answer and traverse as to

United States District Court
Northern District of California

the newly exhausted claims (or an indication that respondent would like to file another procedural motion).  If respondent files the aforementioned supplement, respondent should address whether the newly exhausted claims relate back to the amended petition in light of *Walker*, *Green*, and *Zarvela*. The supplement should also address whether all or just some of the claims in the SAP (i.e., the IAC and cumulative error claims) relate back to the amended petition.  If respondent files a supplement, then petitioner may file a response to the respondent's supplement no later than **twenty-eight (28) days** from the date petitioner receives the supplement.

3.      Petitioner is responsible for prosecuting this case.  Petitioner must promptly keep the court informed of any change of address and must comply with the Court's orders in a timely fashion.  Petitioner is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

4.      This Order terminates Docket Nos. 38 and 50 (only as to the motion to lift the stay).

**IT IS SO ORDERED**.

Dated: February 23, 2022

SUSAN ILLSTON
United States District Judge