United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALVIN N. CRAVEN, | Case No. 20-cv-01933-SI (PR) |
| Petitioner, | |
| v. | **ORDER DENYING HABEAS PETITION** |
| JASON SCHULTZ, Acting Warden,[1] | Re: Dkt. Nos. 1, 69 |
| Respondent. | |

Kalvin N. Craven filed this *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction from Alameda County Superior Court for multiple convictions of second degree robbery with firearm-use enhancements. The operative petitions are the original petition, *see* Dkt. No. 1 at 7-10,[2] and the Second Amended Petition ("SAP"), *see* Dkt. No. 69 at 2-28.[3] The Court issued orders to show cause why the original petition and SAP should not be granted, respondent filed an answer and a supplemental answer, and Craven filed a traverse and a supplemental traverse. For the reasons discussed below, all the claims in his original petition and SAP will be DENIED.

---

[1] Jason Schultz, the current acting warden of the prison where Craven is incarcerated, has been substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[3] The Court notes that the SAP was originally attached to Craven's motion to lift stay (Dkt. No. 50), and thus it is also cited to in this order as Docket No. 50-1. *Compare* Dkt. No. 69 at 2-28 *with* Dkt. No. 50-1 at 3-53.

**FACTUAL BACKGROUND**

A.    <u>August 10, 2017 Robberies and Attempts by the Victims to Identify Robbers</u>

On August 10, 2017, at 10:00 a.m., Nhat Ly was walking door-to-door distributing Jehovah's Witnesses publications and preaching, accompanied by three other colleagues. 5RT 209-210.[4] At East 21st Street and Eighth Avenue in Oakland, across from the Champa Garden restaurant, two black males approached. 5RT 212-214. One was wearing a "light-colored hooded" sweatshirt and carrying an automatic handgun. 5RT 215-216. The other black male wore "all black" clothes. 5RT 215. The men demanded, "bags, bags, bags." 5RT 218. Shocked and afraid, Ly and his colleagues handed over their bags. 5RT 218-219. The man with the gun then demanded "wallet[s]." 5RT 219. Ly handed over $40 to $50 in cash. 5RT 221. The man with the gun asked Ly, "Is that all you have in there?" 5RT 220. Ly showed the man his empty wallet. 5RT 220. The robbers ordered the victims to turn around and then both robbers ran across the street. 5RT 222. At 6:00 p.m., Ly arrived at the police station for a show-up. 5RT 226-228. From 45 to 47 feet away, Ly recognized the "outfit" and build of the man who wore the light hooded jacket. 5RT 228-229. At the police station, Ly viewed surveillance camera images and identified both robbers. 5RT 231.

Guo Li was one of the colleagues who accompanied Ly in "preaching [the] word" that day. 5RT 248. According to Li, the man with the gun demanded wallets, bags, and Li's iPhone. 5RT 251, 253, 255. Li handed over about $200 in cash and his iPhone. 5RT 255. Li described the one who held the gun as the taller man with the "whiter shirt." 5RT 251. The man with the gun ordered, "Turn around, walk the other way." 5RT 256. The robbers then walked across the street toward the restaurant. 5RT 257. Later at the show-up, Li was unable to identify the robbers. 5RT 258-260. At the police station, Li reviewed surveillance camera video and identified both robbers. 5RT 260. Li identified surveillance camera images depicting the two robbers. 5RT 250. At trial, Li testified that still images from the surveillance video depicted both robbers. 5RT 260-261.

Beumont Yung, also a colleague of Ly's, was in charge of accompanying Xue Juan-Luo, an 85-year-old woman who is blind in one eye, on August 10, 2017. 5RT 303-304, 316. Yung saw

---

[4] The Clerk's Transcript ("CT") and Reporter's Transcript ("RT") have been lodged as Respondent's Exhibits D and E respectively. Dkt. Nos. 12–6 – 12-14. The number preceding CT or RT refers to the volume, and the number following CT or RT refers to the page.

United States District Court
Northern District of California

two men in hoodies quickly cross the street, directly towards him and his colleagues.  5RT 305-07.
According to Yung, the robbers wore different colored hoodies (black and gray), and the one with
the gray hoodie had a gun drawn.  5RT 306-308.  Pointing the gun at the victims, the man with the
gun said, "bags, bags, bags."  5RT 311.  When the man with the gun asked for "wallets," Yung
handed over about $100.  5RT 312.  Yung stated that he was translating what the robber with the
gun was saying to Juan-Luo, who was looking at the gun "in shock" as she handed over her bag.
5RT 313-314.  At trial, Yung identified still images depicting both robbers.  5RT 314.  At the show-
up, Yung could not affirmatively identify Craven, but saw that he was "wearing similar clothing"
as the robber.  5RT 320.  After viewing surveillance camera video, Yung identified both robbery
suspects.  5RT 320-321.  At the preliminary hearing, Yung said he "wasn't a hundred percent sure"
when he identified Craven as the man with the gun who had the deeper voice and wore the gray
hoodie.  5RT 322.  Yung recognized Craven as the robber with the gun based on the "lower part of
his face" and his skin tone.  5RT 322.

**B.**    Police Investigation and Trial

Oakland Police Technician Henry Correa downloaded surveillance camera video from the
Champa Garden restaurant, which was across the street from where the robbery took place.  5RT
277-280.  The downloaded video ran from 10:05 a.m. to 10:20 a.m. on August 10, 2017, in real
time.  5RT 281.

The California Court of Appeal described the evidence from the police investigation that
was presented at trial as follows.  This summary is presumed correct.  *See Hernandez v. Small*, 282
F.3d 1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

> Surveillance video from a security camera located at the Champa Garden restaurant
> captured the robbers pulling up in a silver Nissan Altima with license plate number
> 7SIK335, getting out, walking down the sidewalk and then, after being out of sight,
> fleeing the scene with a number of bags in their hand. The face of both men is clear
> on the video. Appellant was arrested with another man later that day wearing a gray
> hoodie, blue jeans, white shoes and sunglasses matching the clothing worn by one
> robber in the video. None of the victims could identify appellant at a field show-up,
> although three of the victims (Ly, Li and Yung) identified the men in the surveillance
> videos as the robbers and identified the bags they were carrying in the video as their
> (the victims') property. A cell phone taken from appellant following his arrest had
> two videos that depicted appellant with a handgun.

United States District Court
Northern District of California

United States District Court
Northern District of California

Appellant was charged by information with four counts of second degree robbery with a firearm use enhancement attached to each count. (§§ 211, 12022.5, subd. (a), 12022.53, subd. (b).) A jury trial was held outside appellant's presence, after he was found to have voluntarily absented himself. The primary defense at trial was mistaken identity.

Officer Bergeron of the Oakland Police Department testified that at about 4:00 p.m. on the day of the robbery, he was ordered to look for a silver Nissan Altima, license plate number 7SIK335, and was given photographs of the robbery suspects that were stills taken of the surveillance camera footage. He saw a group of men shooting dice and hanging out on Chestnut Street in Oakland, two of whom were wearing some clothing consistent with the description of the robbers, with the Nissan parked nearby. Officer Bergeron saw the Nissan when it was driven away and stopped by a marked patrol vehicle. He returned to the Chestnut Street area and then proceeded to MLK Boulevard and 29th Street, where he saw appellant. Officer Bergeron identified a photograph of appellant with his hands in the air and confirmed that it accurately showed how appellant looked on the date of the robbery. He also identified appellant in a photograph that was a still taken from the surveillance camera footage.

The prosecution also presented the testimony of Officer Mullens of the Oakland Police Department, who arrested appellant on the day of the robbery. He had received photographs of the robbery suspects and recognized one of them as appellant. Appellant was seen by other officers near MLK Boulevard and 29th Street and Mullens went to the area to make the arrest. Images from the body camera he was wearing at the time were introduced as evidence. Officer Mullens testified that restaurant surveillance camera images depicted appellant, as did the two videos taken from his cell phone. He had also arrested appellant on July 11, 2017, and spent 30 minutes to one hour with him on that date. Officer Mullens identified appellants' 2017 booking photograph.

*People v. Craven*, No. A154783, 2019 WL 5704628, at *1-2  (Cal. Ct. App. Nov. 5, 2019).

Inspector Richard Strang from the Alameda County District Attorney's Office examined Craven's iPhone, which was confiscated upon his arrest.  5RT 286.  From police department surveillance camera video depicting Craven sitting at a table and unlocking his phone, Inspector Strang was able to decipher the passcode and unlock the cell phone.  5RT 143, 288, 343-344.  Using Cellebrite software, Inspector Strang downloaded two videos from the cell phone.  5RT 289-90.  Inspector Strang identified People's Exhibit 11 as the two videos later deemed admissible from Craven's iPhone.  5RT 291.  These videos depict what appears to be Craven sitting in a car holding a different handgun in each clip.  5RT 137.  At trial, Officer Mullens also testified that the videos taken from Craven's cell phone depict Craven.  5RT 413-415.

**PROCEDURAL BACKGROUND**

The following background is taken from the Court's March 24, 2023 Order:

The original petition provides the following information: After a jury trial in Alameda County Superior Court, petitioner was found guilty of four counts of robbery and was found to have personally used a firearm in the commission of the offenses. He was resentenced on June 29, 2018, to a prison term of 28 years.

Petitioner appealed. The California Court of Appeal affirmed the conviction in 201[9], and the California Supreme Court denied his petition for review on January 29, 2020. He also filed multiple state habeas petitions in the Alameda County Superior Court that were denied in 2020.

He then filed the instant federal habeas action on March 19, 2020. His original petition has a proof of service stating that he mailed it to the Court on March 11, 2020. The petition was stamped "filed" on March 19, 2020. As a *pro se* petitioner, petitioner receives the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to a court. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). The original petition is deemed filed as of March 11, 2020. Petitioner alleged three claims: (1) the trial court's evidentiary ruling admitting videos from his cell phone violated due process; (2) the trial court violated his constitutional rights by engaging in "ex parte" communications with jurors during deliberations and by failing to answer a jury question about a sentence enhancement allegation; and (3) [ineffective assistance of counsel ("IAC")] claim based on trial counsel's failure to move to suppress videos obtained from petitioner's cell phone without a warrant. *See* Dkt. No. 1.

On April 14, 2020, the Court found that, liberally construed, these claims were cognizable in a federal habeas action and warranted a response. Dkt. [No.] 7 at 2.

Thereafter, petitioner moved to supplement his federal habeas petition with further argument in support of his claim that his right to due process was violated by the erroneous admission of two cell phone videos. Dkt. No. 10.

On June 5, 2020, the Court granted petitioner's motion to supplement. Dkt. No. 11. The Court noted that it would consider the supplemental argument when it came time to rule upon the habeas petition. The Court added that because the supplement contained only further argument in support of an existing claim, there would be no need to adjust the briefing schedule.

On July 17, 2020, respondent filed a response to the petition and to petitioner's request to supplement the petition. Dkt. Nos. 13, 14.

On October 13, 2020, petitioner retained Richard B. Mazer to represent him in this action. Dkt. No. 18.

After requesting several extensions of time to do so, petitioner's counsel filed a traverse on March 12, 2021. Dkt. No. 27.

On March 12, March 23, and March 24, 2021, petitioner's counsel filed motions seeking to amend the petition to assert a number of new, unexhausted claims alleging IAC and cumulative error claims. Dkt. Nos. 28-30. On April 12, 2021, respondent

filed an opposition to petitioner's request to amend the petition.  Dkt. No. 32.

On May 4, 2021, the Court denied petitioner's motion to amend the petition because it could not consider unexhausted claims and, thus, it determined that amendment of the petition would be futile.  Dkt. No. 33 at 2.  The Court further added that "[i]f petitioner has filed a new state habeas petition, petitioner shall notify the Court no later than May 14, 2021, and shall attach a copy of the state habeas petition."  *Id.* at 2-3.

Thereafter, petitioner's then counsel, Mr. Mazer, informed the Court that on April 27, 2021, he filed another state habeas petition in the state superior court seeking to exhaust a number of new claims.[FN 1]  Dkt. No. 34.

[FN 1:] Petitioner subsequently alerted the Court of his intent to abandon this state collateral proceeding.  Dkt. No. 48.

As such, on May 6, 2021, the Court found it appropriate to sua sponte stay and abey this petition.  Dkt. No. 35 at 1 (citing *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005)).  The action was stayed and administratively closed.  *Id.*  The Court further noted that it made "no finding at this time as to the timeliness of the currently unexhausted claims."  Dkt. No. 35 at 1.

On June 9, 2021, petitioner filed a motion to lift the stay along with an amended petition.  Dkt. Nos. 38, 39.  His amended petition has a proof of service stating that he mailed it to the Court on June 6, 2021.  The petition was stamped "filed" on June 9, 2021.  Because petitioner receives the benefit of the prisoner mailbox rule, the amended petition is deemed filed as of June 6, 2021.  *See Stillman*, 319 F.3d at 1201.  In his amended petition, petitioner lists eight IAC claims and a claim of cumulative error.  Dkt. No. 39.  Specifically, petitioner alleged the following IAC claims based on trial counsel's failure: (1) to object to Officer Mullen[s]'s testimony regarding his identification of petitioner; (2) to object to testimony by Officer [Mullens], who had arrested plaintiff, and to identification testimony by Officer Bergeron; (3) to be present during the readbacks of testimony requested by the jury during deliberation; (4) not to strike a biased juror who was seated on the jury; (5) to file a motion to suppress petitioner's identification at the lineup; (6) to request an opportunity to explain petitioner's absence at trial; (7) to object to the introduction of enhanced surveillance video, which lacked foundation; and (8) to conduct proper cross-examination of Officer Mullens.  Dkt. No. 39 at 2-7.  Lastly, petitioner alleged that the cumulative effect of trial counsel's deficient performance denied him the right to a fair trial.  *Id.* at 9.

On June 11, 2021, Mr. Mazer filed a motion to withdraw as petitioner's attorney.  Dkt. No. 36.

On June 28, 2021, the Court granted petitioner's motion requesting that the Court reinstate his pro per status, and also granted Mr. Mazer's motion to withdraw.  Dkt. No. 43.  The Court deferred ruling on the motion to lift the stay and the propriety of the amended petition until it received further information about whether petitioner intended to pursue the pending state court habeas petition filed by Mr. Mazer on April

27, 2021.[FN 2]  *Id.* at 1.

[FN 2:] The April 27, 2021 state habeas petition was signed by petitioner and filed with the state superior court on the same date.  Thereafter, the Court received information about the status of the state habeas proceedings from Mr. Mazer and petitioner.  Dkt. Nos. 46, 47, 48.  Petitioner informed the Court that he wished to pursue his state habeas petition filed in the California Supreme Court on September 7, 2021, in which he was attempting to exhaust his IAC claims.  *See id.*  Petitioner requested that the Court continue to defer ruling on his motion to lift the stay until he received a ruling from the California Supreme Court.  Dkt. [No.] 48 at 1.

On December 17, 2021, petitioner informed the Court that the California Supreme Court had denied his state habeas petition on November 23, 2021.  Dkt. No. 49.  He then filed another motion entitled, "Motion to Lift the Court's Stay, and Motion to Withdraw 6/09/2021 Amended Petition, to Submit Perfected Amended Petition That Is Fully Exhausted Removing Three IAC Issues," which will be construed as a motion for leave to file his SAP.  Dkt. [No.] 50.  As mentioned, attached to this motion is petitioner's SAP.  *Id.* at 2-53.  His SAP has a proof of service stating that he mailed it to the Court on December 14, 2021.  The petition was stamped "filed" on December 18, 2021.  Because petitioner receives the benefit of the prisoner mailbox rule, the SAP is deemed filed as of December 14, 2021.  *See Stillman,* 319 F.3d at 1201.  The SAP alleges the newly exhausted claims, including his cumulative error claim and his IAC claims based on trial counsel's failure: (1) to object to testimony by Officer [Mullens], who had arrested plaintiff, and to identification testimony by Officer Bergeron; (2) to file a motion to suppress petitioner's identification at the lineup; (3) to request an opportunity to explain petitioner's absence at trial; (4) to object to the introduction of enhanced surveillance video, which lacked foundation; and (5) to conduct proper cross-examination of Officer [Mullens].[FN 3:]  Dkt. No. 50-1 at 2-52.

[FN 3:] The Court notes that petitioner "remov[ed] three of the IAC issues" he initially listed in his amended petition.  *See* Dkt. No. 50 at 1; compare Dkt. No. 39 at 2-7 with Dkt. No. 50-1 at 2-52.

The Court thereafter lifted the stay and ordered respondent to file further briefing related to "amended petition" filed on June 6, 2021 ("June 6, 2021 amended petition").  *Id.* at 11-14.

Respondent thereafter filed a supplement to their opposition to petitioner's motion to amend the petition.  Dkt. No. 60.  Petitioner filed a response to the supplemental opposition.  Dkt. No. 61.  Respondent filed a reply to petitioner's response.  Dkt. No. 63.  And petitioner filed a response to the reply.  Dkt. No. 65.

Dkt. No. 68 at 1-4 (brackets added).

On November 20, 2023, the Court granted Craven's re-filed request to augment the record with People's Exhibits 9 and 11 that were admitted in evidence at his state court criminal trial.  *See* Dkt. No. 78.  Craven had originally moved to augment the record with two cell phone videos and a

surveillance video that were admitted in evidence at his state court criminal trial. *See* Dkt. No. 13. Respondent filed a response explaining that respondent did not have access to or control of the trial exhibits including the videos and that an order from this Court to the Alameda County Superior Court would be necessary to obtain the videos. Dkt. No. 14. Respondent submitted copies of still photos from the videos, as only still photos had been served on respondent during the state court appeal. *Id.* The Court initially denied the motion to augment the record, *see* Dkt. No. 16, but thereafter Craven moved for reconsideration of that denial, arguing for the first time that the California Court of Appeal actually did have the video exhibits when it considered his case and later returned the video exhibits to the Alameda County Superior Court, *see* Dkt. No. 23. Thus, the Court granted Craven's motion for reconsideration and gave him "[n]o later than March 12, 2021" to augment the record "by filing a copy of the video exhibits that were used at his trial and were transmitted to the California Court of Appeal for consideration in the appeal in his criminal case." *See* Dkt. No. 24 at 2. However, the Court noted that as of November 23, 2023, Craven still had not submitted the aforementioned exhibits and that he was representing himself *pro se* as his counsel withdrew from the case, at Craven's request, in June 2021. *See* Dkt. No. 78 at 2. The record showed that Craven became aware that his former counsel never submitted the exhibits even though the Court had granted him permission to do so. *See* Dkt. No. 71 at 1-2. Thus, Craven was seeking leave to "correct this error" and augment the record with People's Trial Exhibits 9 and 11. *See* Dkt. No. 78 at 2. Because respondent did not object to Craven's request, *see* Dkt. No. 74 at 2, the Court granted his re-filed motion to augment the record in this habeas action with People's Exhibits 9 and 11 no later than January 31, 2024, *see* Dkt. No. 78 at 2.

Thereafter, on January 12, 2024, Craven filed a letter to the Court indicating that he was unable to augment the record because his request for People's Trial Exhibits 9 and 11 was denied by the Alameda County Superior Court. *See* Dkt. No. 79 at 1. He adds that he has "no other motions or filings in this court . . . [and] this case is fully briefed." *Id.* The matter is now ready for decision.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under

8

1   28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the petition concerns

2   the conviction and sentence of a person convicted in Alameda County, California, which is within

3   this judicial district.  28 U.S.C. §§ 84, 2241(d).

### LEGAL STANDARD

6   This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

7   pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

8   Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and

9   Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on

10  federal habeas review.  A petition may not be granted with respect to any claim that was adjudicated

11  on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a

12  decision that was contrary to, or involved an unreasonable application of, clearly established Federal

13  law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was

14  based on an unreasonable determination of the facts in light of the evidence presented in the State

15  court proceeding."  28 U.S.C. § 2254(d).

16  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

17  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

18  the state court decides a case differently than [the] Court has on a set of materially indistinguishable

19  facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable

20  application' clause, a federal habeas court may grant the writ if the state court identifies the correct

21  governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

22  principle to the facts of the prisoner's case."  *Id*. at 413.  "[A] federal habeas court may not issue the

23  writ simply because that court concludes in its independent judgment that the relevant state-court

24  decision applied clearly established federal law erroneously or incorrectly.  Rather, that application

25  must also be unreasonable."  *Id*. at 411.  "A federal habeas court making the 'unreasonable

26  application' inquiry should ask whether the state court's application of clearly established federal

27  law was 'objectively unreasonable.'"  *Id*. at 409.

28  The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the

United States District Court
Northern District of California

state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. However, section 2254(d) generally applies to these unexplained decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with a state court's summary denial of a claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853. The federal court must still apply the deference required by section 2254(d)(1). *See Harrington*, 562 U.S. at 98-100. Thus, in conducting this review, the court must determine: "(1) 'what arguments or theories supported or could have supported the state court's decision,' and (2) 'whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.'" *Cook v. Kernan*, 948 F.3d 952, 966 (9th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102).

## DISCUSSION

On March 24, 2023, the Court determined that the parties had already briefed the three claims alleged in the original petition (claims 1-3), *see* Dkt. Nos. 12 (answer), 27 (traverse), and that Craven had raised six more claims in his SAP (claims 4-9), which were also subsequently briefed, *see* Dkt.

United States District Court
Northern District of California

Nos. 72 (supplemental answer), 75 (supplemental traverse).

Craven's nine claims are as follows:

(1) That the admission of two videos obtained from Craven's cell phone denied him due process;

(2) That the trial court violated California Penal Code § 1138 and Craven's constitutional rights because it had "ex parte" communications with the jurors during deliberations and did not answer their question concerning an enhancement;

(3) That trial counsel was ineffective for failing to move to suppress the videos obtained from Craven's cell phone without a warrant;

(4) That trial counsel was ineffective for failing to limit evidence of his prior arrest through Officer Mullens's testimony and limit identification testimony by Officer Bergeron;

(5) That trial counsel was ineffective for failing to challenge his warrantless arrest as unsupported by probable cause;

(6) That trial counsel was ineffective for failing to move for reconsideration of the trial court's initial determination that his absence at trial was "knowing and voluntary;"

(7) That trial counsel was ineffective for failing to object to the introduction of "enhanced" surveillance videos on the ground that they lacked foundation;

(8) That trial counsel was ineffective for failing to cross-examine Officer Mullens on the lack of record of his receipt of surveillance photos depicting Craven; and

(9) That the cumulative effect of trial counsel's errors deprived him of a fair trial.

*See* Dkt. No. 68 at 8-9.

As mentioned above, Craven presented claims 1, 2, 4 and 6 on direct appeal, which the state appellate court denied in a reasoned opinion. *Craven*, 2019 WL 5704628, at *8. Thus, the Court of Appeal's decision is the last reasoned decision to address many of Craven's claims. Thereafter, Craven initially presented claims 5 and 8 in his state habeas petition filed in the state superior court, which the state superior court denied in a reasoned opinion. Dkt. No. 73-6 at 22-25 (Resp't Ex. K - State Superior Court's Reasoned Opinion dated June 3, 2000). Lastly, Craven presented the remaining claims (claims 3, 7, 9) in his state habeas petition filed in the California Supreme Court, which was rejected summarily by the state supreme court. *See* Dkt. Nos. 73-5 at 3-16 (California Supreme Court Habeas Petition dated Aug. 26, 2021), 73-5 at 20 (California Supreme Court's Summary Denial dated Nov. 23, 2021). As such, these IAC claims may be reviewed independently

United States District Court
Northern District of California

by this Court to determine whether that decision was an objectively unreasonable application of clearly established federal law.  *See Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853.

A.    Admission of Cell Phone Videos

Craven claims that the trial court's ruling admitting two videos taken from his cell phone denied him due process.  Dkt. No. 1 at 7-8.

The trial court admitted two videos downloaded from Craven's cell phone that showed an individual, appearing to be Craven, sitting in a car with a handgun on his lap.  *Craven*, 2019 WL 5704628, at *2.  The guns in each video are different.  *Id.*  Inspector Strang testified that the electronic "Metadata"[5] showed the first of these videos was "probably taken with [Craven's] phone" and created on May 26, 2017, at 6:28 p.m., a few months prior to the August 10, 2017 robberies.  5RT 149.  As for the second video depicting an individual, again appearing to be Craven, with a gun in their lap, associated metadata showed it was also created a few weeks prior to the robberies "on or before" June 22, 2017, at 9:12 a.m.  5RT 153.  This second video did not have a "complete set" of Metadata attached to it, so Inspector Strang could not verify that it in fact originated from Craven's cell phone.  5RT 154.

The trial court indicated that it had the discretion to exclude the videos as more prejudicial than probative under California Evidence Code § 352, but declined to do so.  *Craven*, 2019 WL 5704628, at *2.  The trial court explained that it would admit the aforementioned videos identified as 0444 and 0616, as follows:

> Let me tell you what I—first of all, I believe that the cases say—and I look at this as a situation where, obviously, the Court has some discretion. It concerns the admission of a piece of evidence, the standard about whether it's relevant, whether it's unduly prejudicial, how probative it is, all those factors that sort of call into question 352 and the Court's discretion. So I want [sic] record to be clear that I'm aware of that, and that, in looking at this, I'm aware of the fact that I have some discretion, and in exercising that discretion, should consider the factors of prejudice and probative value.

---

[5] Metadata refers to attributes of data, such as when and/or where a file was created and what kind of device it was created on.  *See* 5RT 146.

United States District Court
Northern District of California

I've looked at a number of cases that you've cited, and I think that there was some general rules that come into play. I see in the cases a distinction made between a case where a specific weapon is used and known to have been the weapon, like one case was a .38 Smith and Wesson, was the weapon. And in situations like that, the courts seem to say that it would be problematic to introduce evidence of other kinds of weapons, right? Because we know what kind of weapon was used and whether it's a different type of gun. In one case, they introduced a knife were a gun was used, and they said, "That's not good."

In contrast to that was a situation where it's not known exactly what type of weapon was used. In situations where there seems to be that—if circumstances are ripe and are lined up in a certain way, it may be okay to introduce evidence of a person who possessed a weapon, where it's relevant to the commission of the crime. Even though there's no direct proof that the weapon in the picture or the weapons that may have been there are the exact weapons used, it's relevant circumstantially to prove that either, in this case—in a case like this, that he used a weapon in the course of committing a robbery. And there's a gun enhancement clause alleged. So an armed robbery case.

There are a number of cases, like I cited, the Carpenter case where there was no picture, but there was testimony, I think. The Defendant told a witness that he had a gun in his truck. It wasn't established that that rifle was in fact the weapon used, but they held that that was okay, and it was circumstantial evidence that he committed the charged offense.

In *People v. Neely*, 6 Cal. 4th, 896, there was evidence admitted of a rifle located in the Defendant's truck, and that—there was a slight difference there—it was parked at the scene of the crime, but clearly, it was not the murder weapon, but it was not irrelevant according to the court's assessment.

*People v.*—I can't read my own writing. I guess it's *Lake* [sic][6], 56 Cal. 2d 784, an older case. The Court allowed the admission of the gun found. It was in an abandoned truck, miles from the scene of the crime. And *People v. Cox*, 30 Cal. 4th, the guns were relevant as—pictures of guns, I believe it was, were relevant regarding possibly weapons being used in the commission of a crime.

So all that being said, I'll allow 444 and 616, those two. I think there's a question of cumulativeness here. If all seven were to come in, there would be issues, as Ms. McNamara [defense counsel] pointed out, of some drug use issues.

Ms. McNamara, you said that would be problematic.

I think the two photos, 444 and 616, depict him with weapons. Obviously, from what I'm saying, I think you can infer there's relevance there. But it's prejudicial, obviously. I don't think it's unduly prejudicial. It's not going to be admitted by the Court pursuant to any 1101(b) type of avenue. But obviously it's something they can consider.

---

[6] Based on the citation, the correct name of the case is: *People v. Lane*, 56 Cal. 2d 773 (1961).

The Court feels confident or satisfied there's a sufficient nexus, temporally, in terms of the time and based on the testimony of the inspector with respect to 444 and 616. The others are tenuous in terms of time and with the MP4 factor. But I think that those two photos, the admission of those two photos would strike a balance and would be fair in terms of what Mr. Homer [prosecutor] should be allowed to present to the jury and also protecting Mr. Craven's rights to not have information presented to the jury that might be unduly prejudicial in terms of either gang-related signs or smoking, whatever he was smoking.

So that will be the Court's order. . . .

5RT 172-174 (brackets and footnote added).

Craven contends it was error to admit both videos because there was no definitive evidence as to when they were created and no evidence that either of the handguns in the videos was used in the charged robberies.  Dkt. No. 1 at 7-8.

1.    California Court Of Appeal's Decision

The state appellate court rejected Craven's due process claim for two reasons: (1) evidence that Craven possessed a weapon that could have been used in the present offense may be admissible as circumstantial evidence he committed the crime, and (2) any error in admitting the videos was not prejudicial because it is not reasonably probable that a result more favorable to Craven would have been reached if they had been excluded.  *Craven*, 2019 WL 5704628, at *2-3.

The possession of a firearm prior to the commission of the offense may be probative of the defendant's actual possession of a firearm during the offense.  *People v. Sanchez*, 7 Cal. 5th 14, 55–56 (Ct. App. 2019).  Here, an expert testified that the videos were created two or three months before the robberies.  *Craven*, 2019 WL 5704628, at *2.  The state appellate court found that, while there was no direct evidence that one of the guns in the cell phone videos was the same gun used in the charged robberies, such an inference *could* be drawn.  *Id.*  The state appellate court concluded that trial court thus did not abuse its direction in admitting the videos.  *Id.*

The state appellate court also found that the evidence of Craven's guilt, even without the admission of the cell phone videos, was "overwhelming" stating as follows:

The jury saw a surveillance video taken from across the street from the robbery which clearly shows a man dressed in a gray hoodie and blue jeans get out of the car with a companion, walk up the street, disappear from sight and then reappear carrying the

United States District Court
Northern District of California

victims' bags. The jury also saw body camera images of appellant being arrested the day of the robbery. Officer Mullens, who arrested appellant and had previously arrested him a month prior, identified appellant as the man wearing the gray hoodie in the surveillance video. The robbery itself was not captured on the tape, but all three victims who testified at trial identified the person wearing the lighter colored hoodie (the other robber was dressed in black) as the man carrying the gun.

*Id.* at *3.

2. <u>Analysis</u>

On federal habeas review, the question is whether the admission of the challenged evidence was so prejudicial in the context of the trial as to render the conviction unfair. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (state court's ruling does not violate due process unless evidence is "'of such quality as necessarily prevents a fair trial,'" citation omitted); *Dubria v. Smith*, 224 F.3d 995, 1001 (9th Cir. 2000) (en banc); *see Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (Supreme Court has not clearly delineated when admission of irrelevant or prejudicial evidence rises to the level of a due process violation). "Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process." *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (emphasis in original).

Even the admission of irrelevant evidence does not violate due process unless it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994) (admission of evidence of prior death sentence in penalty phase of capital case did not violate due process, even though the state court had deemed it irrelevant, because jury was presumed to follow the trial court's instructions limiting the consideration of that evidence, and the other relevant evidence was strong); *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir. 1996) (erroneous admission of evidence that defendant had gun collection did not violate due process, where improper testimony was brief, prosecutor did not call attention to evidence, and other evidence of guilt was weighty); *Hamilton v. Vasquez*, 17 F.3d 1149, 1159 (9th Cir. 1994) (erroneous admission of letters written by defendant did not render the trial unfair).

Here, the Court finds that Craven has not shown a due process violation in the admission of

the two cell phone videos.[7]  As explained below, there is at least one permissible inference that can be drawn from the videos depicting an individual, appearing to be Craven, holding guns in the months leading up to the armed robbery.  Moreover, the additional evidence against Craven, even without the admission of these videos, is overwhelming.

Craven's cell phone, seized following his arrest, contained videos depicting him inside a car with different handguns on his lap.  5RT 137, 414, 196-97.  Neither handgun was conclusively shown to be the actual weapon used in the charged robberies.  *See* 5RT 149-154.  However, the evidence was relevant to show consciousness of guilt and Craven's access to handguns.  Thus, the video evidence constituted relevant circumstantial evidence under state law that Craven had the requisite specific intent to commit the robberies and the readiness to commit the robberies.  *See People v. Cox*, 30 Cal.4th 916, 956 (2003) ("We have also held that when weapons are otherwise relevant to the crime's commission, but are not the actual murder weapon, they may still be admissible").

Based on this record, there was clearly a permissible inference the jury could have drawn from the admission of the cell phone videos: that Craven had access to guns in the months leading up to the robbery and thus it is more likely that he was the person in the gray sweatshirt holding a gun during the robbery.  Therefore, it cannot be said that the state appellate court's rejection of the constitutional claim was contrary to or an unreasonable application of Supreme Court precedent, nor was it objectively unreasonable in light of the totality of the evidence presented.

The Court also finds that, in any event, any possible error from the admission of the cell phone videos was harmless due to the overwhelming evidence against Craven.  The three victims who testified at trial saw an automatic handgun brandished by one of the robbers.  5RT 215-216, 251-255, 308.  All three testifying victims later identified the individual in the gray hoodie as the robber with the gun from the surveillance videos and stills.  5RT 229-231, 260-261, 320-322.  At argument to the jury, the prosecutor stated that surveillance video shows a "heavy" "object in the

---

[7] As mentioned above, Craven unsuccessfully attempted to augment the record with the surveillance footage of the August 10, 2017 robberies and the two cell phone videos.  *See* Dkt. No. 71 at 1; Dkt. No. 79.  The Court's inability to view the videos at issue does not affect this decision.

United States District Court
Northern District of California

robber wearing the gray hoodie's pocket," that the prosecutor argued was the handgun used in the robbery. 6RT 450-451. Following his arrest, police seized Craven's *gray hoodie*, blue jeans, white shoes, sunglasses, and cash—all items the robber with the gun possessed. 5RT 344, 405-409. Police also found Craven in the vicinity of the silver Nissan that was used in the commission of the robbery earlier that day. 5RT 363, 361-362. Thus, even if the videos were admitted in error, the evidence that Craven possessed handguns on other occasions was cumulative information that could not have prejudiced him. Craven therefore is not entitled to the writ of habeas corpus on this claim.

B.    "Ex Parte" Communications with Jurors

Craven contends the trial court violated California Penal Code § 1138 because it had "ex parte" communications with the jurors during deliberations and did not answer their question concerning an enhancement. Dkt. No. 1 at 9; *see* Dkt. No. 69 at 6. He also contends that this "ex parte" communication violated his constitutional rights. Dkt. No. 1 at 9. He argues that this error calls for a reversal of the judgment in its entirety. *Id.*

1.    California Court Of Appeal's Decision

The state appellate court described the relevant facts as follows:

During deliberations, the jury requested a readback of Officer Mullens's testimony and a replay of two videos. At 11:08 a.m. on Friday, December 15, 2017, the court and counsel met to discuss the jury requests and the logistics for the replay of the videos. Counsel stipulated that the readback and presentation of the videos would be done in their absence.

At 2:47 p.m. that same day, the jury submitted jury request number 3, then recessed for the evening at 3:47 p.m. Jury request number 3 asked for a readback of the testimony "Re: Gun" from victims Ly, Li and Yung.

On Monday, December 18, 2017, jury deliberations resumed at 9:36 a.m., and at 9:41 a.m., the court and counsel discussed jury request number 3 and counsel stipulated that the readback could be done in their absence. Subsequently, in the absence of counsel, the trial court informed the jury that the court reporter had assembled the testimony and would commence the readback. The record reflects the following colloquy before the readback occurred:

"THE COURT: Good morning, everybody. Good to see you.

"So we have received a request that you submitted regarding the testimony that you want to hear. Madam Court Reporter has been able to locate it. So just as the last time, we'll let you have the courtroom as part of your deliberations, and the testimony will be read to you, okay? The record should reflect both attorneys were here just moments ago, and they have waived their appearance to be present [sic].

"And as I said last time, this is considered part of your deliberations. So with that, I will leave you with Madam Reporter, who will read the testimony to you, okay?

"JUROR 12: So if we've come to a decision on the charges but we got hung on the enhancement, what would happen?

"THE COURT: You would—well, at some point, if you felt that you needed to inform me that you had reached a certain point with regard to that question, you would let me know. Okay?

"JUROR 12: Okay.

"THE COURT: So let me do this: Before you go on, why don't you write these down, perhaps, and that may give you a better—since the attorneys aren't here, I don't want to go too far down that road. I don't want to preclude you from asking those questions. So why don't we read this testimony, and after that's done, the attorneys will be back. Write out the questions for me, and then we'll address them, okay?

"JUROR 12: Thank you.

"THE COURT: I'm going to leave you with Madam Reporter. And when you are done, don't go back up. Stay here so we can address that point, okay? All right. Thank you."

At 10:17 a.m., following the readback, the jury returned to the jury room to deliberate. At 10:31 a.m., the jury reported that verdicts had been reached. No further mention was made of deadlock on the enhancements. The verdicts were returned.

*Craven*, 2019 WL 5704628, at *5.

The state appellate court found that there was no improper communication outside defense counsel's presence. *Id.* at *6. Counsel waived their right to be present after the readback commenced. *Id.* The trial court further did not provide a substantive answer to Juror 12's question. *Id.* The state appellate court noted that the jury did not follow through with its question on the enhancement simply because it reached a verdict instead. *Id.*

Even assuming some technical error occurred in communications between the trial court and the jury, the state appellate court found that it was harmless beyond any reasonable doubt. *Id.* The

United States District Court
Northern District of California

trial court's comments were a neutral effort to address any question the jury might have and to make sure counsel was informed and could provide input. *Id.* The state appellate court also concluded that there was no indication the jurors had any doubt or disagreement regarding the enhancements by the time the verdict was reached. *Id.*

### 2.    Analysis

This Court finds that Craven has not shown a violation of his constitutional rights based on this "ex parte" communication between the trial court and Juror 12.

A claim of state instructional error can be the basis of federal habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. The test for constitutional error is whether there is a "reasonable likelihood" the jury misapplied the instructions. *Id.* Where the alleged error stems from the failure to give a jury instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir. 1993).

Here, the record establishes that the trial court's practice was to inform counsel of all juror requests before drafting answers or ordering readback. 6RT 507-508, 515-516. Consistent with that practice, the trial court invited the jury to submit questions or requests in writing, so that the parties and the court could discuss possible answers, as was previously done. *Id.* The trial court did not refuse to provide a substantive answer to Juror 12's hypothetical question. 6RT 515-516. The trial court simply invited the jury to confer in the courtroom following readback, then produce a written request for the purposes of discussion with counsel and the court. *Id.* The record reflects that the jury decided to continue to deliberate following readback rather than produce a written request. *See id.* No further written request was forthcoming before the jury reached their verdict shortly thereafter. *See* 6RT 516-519. Moreover, the record does not establish that the jury was deadlocked. *Id.* The record thus fails to establish any due process violation.

To the extent Craven argues that the procedure followed by the trial court violated California Penal Code § 1138, the Court finds that he is not entitled to federal habeas relief because, as a

general proposition, federal habeas courts do not review questions of state procedural law.  *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68 (reiterating that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution"); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1998) ("Federal habeas courts lack jurisdiction, however, to review state court applications of state procedural rules").  The fact that Craven is attempting to characterize this state law claim as a violation of his federal constitutional rights is not sufficient to render it cognizable.  *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (holding that a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process," and that "alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings).

Lastly, Craven has failed to cite any United States Supreme Court case holding that a defendant's federal due process right to a fair trial is violated when a trial judge invites the jury to make a written request for the purposes of discussion with counsel, before drafting a response to a jury question.  In the absence of clear Supreme Court authority, the federal court has no basis for finding that the state appellate court's rejection of this claim either was contrary to or involved an unreasonable application of clearly established Supreme Court law for purposes of 28 U.S.C. § 2254(d)(1).  Moreover, Craven does not show that any presumed error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Accordingly, Craven is not entitled to the writ on this claim.

C.    IAC Claims

The clearly established federal law governing IAC claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense."  *Id.* at 687.  Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of

United States District Court
Northern District of California

attorneys in criminal cases." *Id.* at 687-688 (internal quotation marks omitted). Reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Where deficient performance is established, "[the] errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687). The *Strickland* standard applies to trial and appellate counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989).

Under AEDPA, a federal court's review of a state court's decision on an IAC claim is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The question is not whether counsel's actions were reasonable; rather, the question is whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (same).

### 1. Cell Phone Videos

Craven raises multiple IAC claims against his trial counsel, Romany McNamara, and Craven's first claim relates to Ms. McNamara's failure to move to suppress the videos obtained from Craven's cell phone without a warrant. Dkt. No. 1 at 10. There is no reasoned state court decision addressing this IAC claim. Thus, this Court will conduct "an independent review of the record" to determine whether the California Supreme Court's summary denial of this claim was contrary to or an unreasonable application of clearly established federal law. *Plascencia*, 467 F.3d at 1197-98; *Himes*, 336 F.3d at 853.

This Court finds, upon independent review of the record, that Craven has failed to demonstrate that the state court's rejection of the claim was contrary to or an unreasonable application of Supreme Court precedent, nor that it was objectively unreasonable in light of the totality of evidence presented.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been

1    different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v.*

2    *Morrison*, 477 U.S. 365, 375 (1986); *Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999).

3        Respondent points out that "[t]he record reflects that, at the time of arrest, [Craven] was on

4    active parole and on a probation grant." *See* Dkt. No. 12-1 at 22 (citing 2CT 310, 468).  In addition,

5    respondent notes that trial counsel was also aware that Craven was subject to a "parole warrant."

6    *See id.* (citing 2CT 310).  Respondent further notes that the record suggests that at the time of arrest,

7    Craven was subject to search and seizure clauses from his probation case and from his parole grant.

8    *See id*.  Specifically, respondent argues that counsel may have factually determined that at the time

9    of the search of Craven's cell phone, investigating officers were fully aware that he was subject to

10    search clauses that allowed for a legal warrantless search of his cell phone.  *See id.*  Therefore,

11    respondent argues that the record does not establish that counsel was ineffective for failing to file a

12    meritless motion to suppress.

13        The Court agrees with respondent.  Craven has not proven that his Fourth Amendment claim

14    regarding suppression of the cell phone videos is meritorious, nor that there is a reasonable

15    probability that the verdict would have been different absent these videos.  Specifically, even

16    assuming that trial counsel was ineffective, the Court found above that Craven has failed to

17    demonstrate prejudice from the admission of the cell phone videos where the evidence against him

18    was overwhelming.  *See supra* DISCUSSION Part A.2.  Moreover, these two cell phone videos at

19    issue showed that Craven possessed handguns on other occasions.  *See* 5RT 137, 414.  As the Court

20    also found above, even if these videos had been admitted in error, such evidence that Craven

21    possessed handguns on other occasions was cumulative information that could not have prejudiced

22    him.  *See supra* DISCUSSION Part A.2.  Accordingly, Craven has failed to demonstrate prejudice

23    from trial counsel's failure to challenge the search of the cell phone on Fourth Amendment grounds.

24    *See Strickland*, 466 U.S. at 693, 697.  Craven is not entitled to relief on his IAC claim relating to

25    trial counsel's failure to move to suppress the cell phone videos (claim 3), and this claim is DENIED.

26

27            2.    Testimony of Officers Mullens and Bergeron

28        Craven contends that trial counsel was ineffective for failing to limit evidence of his prior

United States District Court
Northern District of California

arrest through Officer Mullens's testimony and limit identification testimony by Officer Bergeron.
Dkt. No. 69 at 2-5.

a.    California Court Of Appeal's Decision

Craven contended that trial counsel failed to object when Officer Mullens testified that he had previously arrested Craven on July 17, 2017, spent 30 minutes to one hour with him, and identified his 2017 booking photo at trial. *Craven*, 2019 WL 5704628, at *4. The state appellate court held that this testimony was relevant to Officer Mullens's familiarity with Craven and ability to recognize him, stating as follows:

> The record does not suggest an objection would have been sustained when identification was contested by the defense at trial and appellant was not present at the trial to be viewed by the jury. Officer Mullens's ability to identify appellant was critical because he was the primary witness to state that appellant was the man in the surveillance video. "Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.)

*Id.*

As for Officer Bergeron's testimony, the state appellate court found that there was similarly no showing that an objection would have caused the trial court to limit the testimony. *Id.* Officer Bergeron testified that he saw Craven on the day of the robbery, both on the street and at the time of his arrest. *Id.* Officer Bergeron identified Craven in a photograph of a subject with his hands in the air as well as in a still photograph taken from the surveillance camera. *Id.* The state appellate court noted: "A lay witness may offer opinion testimony if it is rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony." *Id.* (citing Evid. Code, § 800; *People v. Leon*, 61 Cal.4th 569, 601 (Ct. App. 2015) ("[T]he identity of a person is a proper subject of nonexpert opinion. . . .")). In rejecting this IAC claim upon finding no prejudice from counsel's failure to object to Officer Bergeron's identification testimony, the state appellate court stated as follows:

> Appellant acknowledges that witnesses may identify defendants in surveillance footage or photographs, but argues that Officer Bergeron, unlike Officer Mullens, did not have sufficient contact with appellant before the crimes for his testimony to be helpful to the jury. This goes to the weight rather than the admissibility of the opinion. (See *People v. Larkins* (2011) 199 Cal.App.4th 1059, 1067-1068; [*People*

United States District Court
Northern District of California

*v.*] *Perry*, [(1976)] 60 Cal.App.3d [608,] 613.)   Moreover, even if we assume appellant is correct, he does not explain how Officer Bergeron's testimony on this point could have been prejudicial when Officer Mullens had already identified appellant as the man in the surveillance footage, and when the jury saw video footage from appellant's arrest which they could compare for themselves to the surveillance video. (See *People v. Gray* (2005) 37 Cal.4th 168, 208 [failure to object to testimony on work product grounds not prejudicial when other evidence that was not refuted implicated defendant as perpetrator]).

*Id.* (brackets added).

### b.    Analysis

The Court finds that the state appellate court did not unreasonably apply *Strickland* in rejecting Craven's IAC claim relating to trial counsel's failure to object to the testimony of Officers Mullens and Bergeron.

As explained above, the state appellate court determined that the challenged testimony would not have been excluded, and thus that any objection would have been futile.  *See Craven*, 2019 WL 5704628, at *4.  To the extent the state appellate court found such evidence admissible under state law, its decision is not subject to review here.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Thus, Craven must show that trial counsel was compelled to act because the evidence rendered the trial "so fundamentally unfair as to violate due process."  *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *see Montana v. Egelhoff*, 518 U.S. 37, 43-44 (1996).  As explained above, only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process.  *See Jammal*, 926 F.2d at 920.  "Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'  Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose."  *Id.* (citations omitted).  The state appellate court's assessment of trial counsel's responsibilities in turn rested on that court's assessment of the Supreme Court's holdings concerning the admissibility of evidence.

With regard to Officer Mullens's testimony, this Court agrees with the state appellate court that trial counsel could have reasonably concluded that an objection would have been futile.  *See Craven*, 2019 WL 5704628, at *4.  Identity was a principal issue at trial, and Officer Mullens's prior contact and details thereof were relevant to his ability to identify Craven from the surveillance photos and when he encountered him in person on the day of the robbery.  *Id.*  Craven asserts the

1   evidence could have been admitted without identifying the encounter as an arrest, *see* Dkt. No. 69

2   at 2-3, but he does not explain how Officer Mullens would have explained the encounter (its duration

3   and any details) and recognition of Craven in an unexplained photo without informing the jury, even

4   if implicitly, that the encounter was an arrest.  It is important to note that Craven was not present at

5   trial to be viewed by the jury or identified by testifying witnesses.  *See Craven*, 2019 WL 5704628,

6   at *4.  Accordingly, as there were permissible and relevant inferences to be drawn from Officer

7   Mullens's testimony, the state appellate court reasonably concluded that any objection to the

8   evidence would have been futile.  *See Jammal*, 926 F.2d at 920.

9         Craven also failed to show a reasonable likelihood of a different result had the suggested

10   limitations been made.  By his proposal, *see* Dkt. No. 69 at 2-3, the jury could have properly learned

11   of Officer Mullens's earlier encounter with Craven, its duration, and so forth, without it being

12   labeled an arrest.  If that is so, then Officer Mullens's testimony would have substantively remained

13   the same.

14         Further, the jury was instructed not to be biased against Craven because he had been arrested.

15   6RT 455.  The jury is presumed to have followed that instruction.  *Weeks v. Angelone*, 528 U.S.

16   225, 234 (2000).  As the state appellate court explained and this Court has noted above, the evidence

17   against Craven was also overwhelming.  *See Craven*, 2019 WL 5704628, at *5; *see also supra*

18   DISCUSSION Part A.2.  Accordingly, the fact the jury knew that Officer Mullens's prior contact

19   with Craven arose from an arrest was not consequential.

20         Regarding Officer Bergeron's testimony, Craven's challenge goes to the *weight* of Officer

21   Bergeron's testimony and identification, not its admissibility.  Officer Bergeron testified that he

22   viewed photos of the suspects, then recognized Craven on the street as one of the persons he had

23   seen in those photos.  5RT 357, 361-369.  The suggestion that Officer Bergeron lacked sufficient

24   basis to give such testimony, or lacked a sufficient basis to recognize a person as the same person

25   he had seen in a photo, is meritless.  As the state appellate court pointed out, the jury had seen

26   footage from Craven's arrest as well as the surveillance photos and could make the same conclusion

27   (and evaluate Officer Bergeron's identification testimony).  *See Craven*, 2019 WL 5704628 at *4.

28   For much the same reasons, there is no reasonable likelihood that, had counsel objected, the result

United States District Court
Northern District of California

of the proceeding would have been any different.  The state appellate court thus accordingly reasonably applied *Strickland* in rejecting this claim.

Craven is not entitled to relief on his IAC claim relating to trial counsel's failure to object to the testimony of Officers Mullens and Bergeron (claim 4), and this claim is DENIED.


3.      Absence at Trial

Craven contends that trial counsel was ineffective for "failing to move for reconsideration of the trial court's initial determination" that his absence at trial was "knowing and voluntary."  Dkt. No. 69 at 5-6, 16.  Craven asserts trial counsel "failed to notify" him that "he was even allowed to move for reconsideration," and that he was prejudiced because he was "prevented from explaining to the trial court that his absence was not willful, which could have resulted in a new trial."  *Id.*  As he argued on direct appeal, Craven complains that after he was taken into custody following the guilty verdicts, trial counsel should have moved for reconsideration of the trial court's determination of voluntary absence and established that his absence at trial was not in fact voluntary.  *See id.*; *see also Craven*, 2019 WL 5704628, at *4.

Following voir dire proceedings in early November 2017, the trial court told Craven and counsel that the evidentiary portion of the trial would commence on December 11, 2017.  *See* 2CT 312; 1RT 1; 4RT 119-121; 5RT 125, 133**.**  Craven thereafter posted bail, but failed to appear at trial on December 11, 2017.  1CT 285, 291-292; 5RT 124-125, 128.  Craven did not contact his probation officer, his parole officer, or the prosecutor between his release on bail and the December 11, 2017, trial date.  *See* 5RT 129-132; 2CT 312.  On December 11, 2017, the trial court considered testimony concerning efforts made by Inspector Shawn Knight (from the District Attorney's Office) to find Craven, determined that Craven was willfully absent at trial, and issued a bench warrant.  5RT 128-135.  On March 9, 2018, after trial, Craven appeared in court following his apprehension.  2CT 401, 423; 7RT 554.  At that time, he provided no reason for his absence, and instead he indicated that he intended to file a *Faretta* motion in order to represent himself and also file a motion for new trial. 7RT 555-557.

a.    <u>State Court Decisions</u>

The state appellate court rejected this IAC claim on direct appeal upon finding that Craven "[made] no showing that counsel failed to disclose pertinent facts to the court once he reappeared that would have adequately explained his absence at trial." *Craven*, 2019 WL 5704628, at *4.  Even at the time of appeal, Craven offered no reason for his absence that would have undermined the trial court's determination that his absence was willful.  *Id.*  The state appellate court found that Craven "[had] not demonstrated either deficient performance or prejudice on this point."  *Id.*

Craven raised this IAC claim again on collateral review, adding to the record his own unsigned declaration related to this claim, a handwritten version of which he submitted to this Court.  Dkt. No. 73-5 at 10, 14; *see also* Dkt. No. 69 at 16.  The California Supreme Court summarily denied this claim.  Dkt. No. 73-5 at 20.

b.    <u>Analysis</u>

This Court finds that Craven has not shown ineffective assistance of counsel based on trial counsel's failure to request an opportunity to explain Craven's absence at trial.

Craven has never asserted he told his trial counsel anything about his absence at any time, much less something that would have proved consequential in counsel moving the trial court to reconsider its finding that Craven's absence was willful.  *See Strickland*, 466 U.S. at 691 (noting that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions," and "on information supplied by the defendant").  Indeed, it is still unclear to this Court where Craven was when his trial took place, or the reasons for his absence.  Craven asserts in his SAP that upon his release from custody he "started using drugs and failed to report to [his] parole officer," but offers no other detail on the subject or explanation of how his drug use rendered him involuntarily absent from November 17, 2017 (after voir dire) to March 9, 2018 (when he was apprehended).  *See* Dkt. No. 69 at 16.  He also does not cite any state law authority for the proposition that his alleged drug use or even addiction would suffice to render his absence from trial involuntary.  *See id.*

Craven alternatively asserts in a conclusory fashion that he was "not aware that [his] trial

was taking place." *Id.* After his release on bail, the record shows that Craven disappeared for almost four months, appearing only because he was finally located and arrested—not because he contacted his attorney, the trial court, or anyone else associated with his case. *See Craven*, 2019 WL 5704628, at *4. Craven further suggests—again, in a conclusory fashion—that he believed he had been released on bail indefinitely, without a need to appear again before his parole officer, trial counsel, or the trial court. *See* Dkt. No. 69 at 16. Such a conclusory assertion does not constitute the clear and convincing evidence required to overcome the presumptively correct trial court's factual finding that Craven was aware of his trial date. *See* 28 U.S.C. § 2254(e)(1). Specifically, the trial court's factual finding that Craven was aware of his trial date (following voir dire, which he attended), *see* 5RT 133-134, is entitled to a presumption of correctness under section 2254, *see Dyer v. Calderon*, 151 F.3d 970, 975 (9th Cir. 1998) ("So long as the fact-finding process is objective and reasonably explores the issues presented, the state trial judge's findings based on that investigation are entitled to a presumption of correctness."). To rebut this presumption, a petitioner must present clear and convincing evidence establishing that the state court's finding was erroneous. *See* 28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) ("Once the state court's fact-finding process survives this intrinsic review [,] . . . the state court's findings are dressed in a presumption of correctness [ ]" and may be overturned only if new evidence presented for the first time in federal court "amounts to clear and convincing proof that the state-court finding is in error."), *overruled on other grounds by Pinholster*, 563 U.S. at 185. Here, Craven has failed to demonstrate any flaw in the trial court's fact-finding process, or present any evidence, let alone clear and convincing evidence, to support his claim. Craven also had several opportunities, following his reappearance, to mention the reason for his disappearance to the trial court or complain about a missed opportunity to explain his absence, but the record shows he said nothing about this. As such, the Court may properly defer to the trial court's finding that Craven was aware of his trial date.

In summary, even assuming Craven had told his trial counsel what he alleges here in his declaration, trial counsel would not have acted unreasonably in deciding not to proffer such assertions to the trial court to persuade it to change its mind about the legitimacy of Craven's absence. For the same reason, Craven has failed to show any prejudice in trial counsel's actions,

1    even assuming, arguendo, Craven told counsel what he alleges now.  This Court finds that the state

2    courts' rejection of Craven's claim (both on direct and collateral review) constituted a reasonable

3    application of the *Strickland* standard.  Craven is not entitled to relief on his IAC claim relating to

4    trial counsel's failure to request an opportunity to explain Craven's absence at trial (claim 6), and

5    this claim is DENIED.

6

7                        4.          <u>Arrest and Identification at Lineup</u>

8           Craven contends that trial counsel was ineffective for failing to challenge his warrantless

9    arrest as unsupported by probable cause.  Dkt. No. 69 at 7-11.  Craven alleges that the declaration

10   of probable cause for his arrest falsely stated that he was positively identified by a victim at a field

11   show-up.  *Id.*  Without this assertion, Craven claims that there was no probable cause for arrest, and

12   that trial counsel provided ineffective assistance for failing to move to suppress evidence or for

13   dismissal due to Craven's arrest allegedly being in violation of the Fourth Amendment.  *Id.*

14

15                       a.          <u>State Court Decisions</u>

16          Craven first raised this claim on collateral review in a state habeas petition filed in the

17   Alameda County Superior Court.  The state superior court denied Craven's claim in a reasoned

18   opinion, as follows:

19

20         Petitioner alleges that the declaration of probable cause for Petitioner's arrest falsely
           states that Petitioner was positively identified by a victim at the field show-up.

21         Indeed, as noted above, none of the victims could identify Petitioner at a field show-
           up, but the declaration of probable cause for warrantless arrest contained in the court

22         file states, "One of the victims responded for a field show up and identified CRAVEN
           as the person that robbed him with the firearm." Petitioner alleges that without this

23         false assertion, there was no probable cause for his arrest, and that counsel provided
           ineffective assistance for failing to move to suppress evidence or for dismissal due

24         to Petitioner's arrest allegedly being in violation of the Fourth Amendment to the
           United States Constitution.

25         When an ineffective assistance claim is based upon the failure to bring a motion to

26         suppress, a defendant "must also prove that his Fourth Amendment claim is
           meritorious and that there is a reasonable probability that the verdict would have been

27         different absent the excludable evidence in order to demonstrate actual prejudice."
           (*Kimmelman v. Morrison* (1986) 477 U.S. 365, 375.) Here, Petitioner can prove

28         neither.

United States District Court
Northern District of California

As noted above, Petitioner made a similar complaint during his post-conviction *Marsden* hearing.[8] In response, Ms. McNamara acknowledged that the portion of the probable cause declaration concerning the field show-up was inaccurate, but stated that she believed that there was enough probable cause to arrest Petitioner because Officer Mullens' testimony was that he recognized Petitioner from the surveillance video. In the Petition, Petitioner argues that this reasoning is insufficient because Officer Mullens is not mentioned in the probable cause declaration, Officer Mullens was ordered by Officer Bergeron to arrest Petitioner, and that there was no record of Officer Mullens having received still photographs of the surveillance video.

Probable cause to arrest exists where facts known to the arresting officer would be sufficient to persuade a person of 'reasonable caution' that the individual arrested committed a crime." (*People v. Spencer* (2018) 5 Cal.5th 642, 664.) Probable cause for an arrest is a fluid concept, turning on the assessment of probabilities in particular factual contexts; the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that belief must be particularized with respect to the person to be seized. (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

Here, the police had probable cause.

The above apparently false statement in the probable cause declaration is preceded by the following: "On 10 Aug 17, two suspects robbed 4 separate victims at gunpoint at 8th Ave. & E. 21st St. The incident to [sic] partially captured on surveillance camera. One of the suspects (CRAVEN) was later observed in the 1000 block of 55t[h] St. [¶] CRAVEN matched the description of one of the suspects on surveillance." As noted in the appellate opinion, the face of the robbers was clear on the surveillance video. The surveillance video also captured the men pulling up in a silver Nissan Altima with license plate number 7SIK335. Armed with stills of the robbery suspects taken from the surveillance video, Officer Bergeron spotted two men wearing some clothing consistent with the description of the robbers with the Nissan parked nearby. Officer Mullens, who had previously arrested Petitioner, received photographs of the robbery suspects, recognized one of them as Petitioner, and went to the area where Petitioner was last spotted to make the arrest. Petitioner was arrested wearing a gray hoodie, blue jeans, white shoes and sunglasses matching the clothing worn by one robber in the video.

Petitioner provides no authority for the proposition that a determination of probable cause is confined to the four corners of a declaration of probable cause. Rather, it appears that had counsel made a motion challenging the probable cause for the arrest, Officers Bergeron and Mullen[s] would have testified as described at trial, and such testimony would have supplied sufficient probable cause for Petitioner's arrest. An examination of the preliminary hearing transcript is instructive. There, Officer Mullen[s] testified that he had first arrested Petitioner the month prior to the hearing, and again for the instant offense two weeks later. Based upon his first interaction with Petitioner, Officer Mullen[s] testified that he was able to recognize Petitioner when he saw him again. On the evening of the instant offense, Officer Mullen[s] was notified of a robbery and responded to the location where the Nissan and its occupants were detained. There was another suspect that was not in the vehicle at that time, so Officer Mullen[s] was directed to the area where that suspect may be.

---

[8] In the supplementary answer, respondent points out it "has never had access to the Reporter's Transcript for petitioner's motions, pursuant *People v. Marsden*, 2 Cal. 3d 118 (1970), to substitute his appointed trial counsel, as petitioner did not directly claim error in the denial of that motion on direct review, and respondent was not ordered to appear in petitioner's collateral review proceedings." Dkt. No. 72-1 at 11 fn. 2 (citing Cal. R. Ct. 8.47(b)).

Still photographs of this other suspect taken from a surveillance video were provided to Officer Mullen[s], and he immediately recognized the suspect as Petitioner. About 30 seconds to a minute later, Officer Mullen[s] located Petitioner, detained him, and noticed that he was wearing the same clothes as depicted in the photograph.

Based on these facts, the police had probable cause to arrest Petitioner. (*See People v. Alexander* (2019) 36 Cal.App.5th 827, 841-842, rev. granted (S257190, July 25, 2019) [police officer had probable cause for warrantless arrest of two defendants for robbery based on surveillance videos of series of robberies and officer's encounter with defendants; officer viewed surveillance videos multiple times, videos bore sufficient indicia of reliability that they depicted robberies under investigation, still images from videos were reasonably recognizable as defendants, and officer encountered defendants together at time when one defendant was wearing same jacket and shoes he wore in some of the videos].)

Accordingly, counsel was correct in her assessment of the viability of such a motion in the post-verdict *Marsden* hearing, and thus did not provide ineffective assistance in failing to argue a meritless motion. As noted in Petitioner's direct appeal, "'Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile.'" (*Craven, supra*, at *4, quoting *People v. Price* (1991) 1 Cal.4th 324, 387.)

Furthermore, Petitioner cannot demonstrate that even had such a motion been meritorious that there is a reasonable probability that the verdict would have been different absent the excludable evidence. The Fourth Amendment and its equivalent in the California Constitution bars unreasonable searches and seizures. (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224; U.S. Const., 4th Amend.; Cal. Const., art. I, § 13.) A defendant may move to suppress "any tangible or intangible thing obtained as a result" of an unreasonable search or seizure. (Pen. Code, § 1538.5, subd. (a)(l)(A).) Petitioner fails to specify what evidence would have been suppressed had a suppression motion based on his alleged unlawful arrest been successful. At best, Petitioner could have moved to suppress the two videos that depicted Petitioner with a handgun that were found on the cell phone taken from Petitioner following his arrest. However, in Petitioner's direct appeal, the appellate court found that the admission of the videos was not prejudicial because it is not reasonably probable that a result more favorable to Petitioner would have been reached if they had been excluded. Here, too, "[e]ven if the videotapes from [Petitioner's] cell phone had been excluded, the evidence of his guilt—including his personal gun use—was overwhelming." (*Craven, supra*, at *3.)

Other than the cell phone videos, there is no tangible evidence to suppress because the police obtained no such evidence from Petitioner's arrest. The only intangibles— the arrest itself or the officer's observations—are not suppressible where, as here, the arrest occurred in public. (Cf. *Kirby v. Superior Court* (1970) 8 Cal.App.3d 591, 595 [officer's testimony about observations he made in location where defendant had reasonable expectation of privacy subject to suppression].) Dismissal would not have been a remedy, as the United States Supreme Court has long rejected the argument that an unlawful arrest is a bar to subsequent prosecution. (*United States v. Crews* (1980) 445 U.S. 463,474 ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction"].) Accordingly, Petitioner fails to demonstrate that he was prejudiced by counsel's alleged deficient performance, and the claim must be rejected.

Dkt. No. 73-6 at 22-25 (brackets added).

Craven then renewed this IAC claim in his state habeas petition filed in the California Supreme Court. Dkt. No. 73-5 at 13. The state supreme court denied the claim summarily. *Id.* at 20. Accordingly, this Court "looks through" the state supreme court's unexplained denial to the last reasoned decision addressing this claim, which is the reasons denial by the state superior court. *See Wilson*, 138 S. Ct. at 1192; *see also* Dkt. No. 73-6 at 22-25.

> b.   <u>Analysis</u>

This Court finds that Craven failed to show trial counsel was ineffective for failing to challenge his warrantless arrest as unsupported by probable cause.

As the state superior court set forth, Ms. McNamara explained that she did not object to Craven's arrest on Fourth Amendment grounds because she believed that even without the incorrect statement—that a witness had identified Craven in a field show-up, *see* 1CT 1 (declaration of probable cause)—there was sufficient probable cause to support his arrest, and thus an objection would have been futile. Dkt. No. 73-6 at 24. As the state superior court concluded, trial counsel's decision was reasonable. *Id.*

"The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). As the state superior court pointed out, Craven cited no authority limiting the scope of probable cause to the four corners of a post-arrest statement of probable cause to support a warrantless arrest. *See* Dkt. No. 73-6 at 21. The state superior court was therefore reasonable in concluding that had counsel challenged the arrest, testimony from Officer Mullens would have been adduced, and would have established probable cause. *Id.* The record shows that Officer Mullens already testified at the preliminary hearing that he had arrested Craven about a month before the instant offense. 1CT 148. Before arresting Craven, Officer Mullens had received still images from surveillance videos, and recognized Craven and recalled his name from his prior arrest the previous month. 1CT 150-151. Shortly after viewing those photos, the officers located Craven and arrested him. 1CT 151-152. Craven was wearing the same shoes, jeans, gray hoodie, and sunglasses that he

was wearing in the surveillance video footage.  1CT 151-152.  Therefore, even without considering the incorrect statement in the declaration, Officer Mullens had probable cause to arrest Craven, for the same reasons trial counsel had assumed.  *See* Dkt. No. 73-6 at 21, 23.  At a minimum, trial counsel and the state superior court acted reasonably in concluding as much.

The Court further finds that Craven cannot show that the state superior court was unreasonable in concluding that he failed to show prejudice, even assuming error by counsel.  The state superior court found that challenging the arrest would not have resulted in dismissal of the case.  *See* Dkt. No. 73-6 at 24 (*citing United States v. Crews*, 445 U.S. 463, 474 (1980)).  Because the arrest occurred in a public place, Craven could not suppress arresting officers' observations of him, including the clothing he was wearing, which matched the clothing he wore in the surveillance videos.  *Id.*  Thus, contrary to Craven's assertion, the suppression of his items of clothing would not have materially altered the outcome at trial; the arresting officers' observations and descriptions of that clothing would have remained.  As for Craven's cell phone and the videos it contained, the state appellate court had found on direct appeal—and, as mentioned above, the state superior court reached the same conclusion—that even if those videos had been suppressed, a different outcome would not have been reached.  *Craven*, 2019 WL 5704628 at *2-3; Dkt. No. 73-6 at 23-24.

In sum, this Court finds that the state court's rejection of this IAC claim constituted a reasonable application of the *Strickland* performance and prejudice prongs.  Craven is not entitled to relief on his IAC claim relating to trial counsel failing to challenge his warrantless arrest as unsupported by probable cause (claim 5), and this claim is DENIED.

### 5.    "Enhanced" Surveillance Videos

Craven claims that trial counsel was ineffective for failing to object to the introduction of "enhanced" surveillance videos on the ground that they lacked foundation.  Dkt. No. 69 at 17-24.  There is no reasoned state court decision addressing this IAC claim.  Thus, the Court will conduct "an independent review of the record" to determine whether the California Supreme Court's summary denial of this claim was contrary to or an unreasonable application of clearly established federal law.  *Plascencia*, 467 F.3d at 1197-98; *Himes*, 336 F.3d at 853.

1    A foundation was laid for the introduction of the surveillance videos generally, but putting

2    aside the question of whether some or all of them were "enhanced."  *See* 5RT 276-83.  Craven's

3    assertion that the videos, or some parts thereof, were "enhanced," stems from the prosecutor's

4    reference to the jury being shown "enhanced" versions of the videos, or stills from those videos, at

5    trial.  5RT 379.  The prosecutor's statements imply that the videos viewed during the preliminary

6    examination were not "enhanced."  *See* 5RT 379.  It is unclear from the record how or to what extent

7    the surveillance videos, or stills therefrom, were "enhanced."  There is, however, a reference to the

8    videos shown to the jury having been "zoomed in," or "magnified," in comparison with their original

9    form.  2CT 368; 5RT 281.

10    This Court finds that Craven shows neither error nor prejudice by trial counsel regarding the

11    "enhanced" surveillance videos.

12    Craven does not allege that there was any more enhancement to the videos than simple

13    "zooming in"; the jury was aware of that "enhancement" (*see* 5RT 281), and it needed no

14    explanation.  Furthermore, there is no allegation trial counsel was unaware of any such enhancement

15    to the videos, nor that it merited a foundation objection.  As Craven fails to allege counsel was not

16    provided the "enhanced" version of the videos before trial, counsel was presumably aware that the

17    videos were zoomed in, magnified, or otherwise "enhanced," and decided a foundation objection

18    was futile or would not advance the defense.  Craven does not allege or show anything that would

19    suggest otherwise.

20    Additionally, Craven fails to show prejudice.  He does not show that a foundation objection

21    would have been sustained, that an objection could not have been quickly and simply met with a

22    minute of foundation testimony, or, barring that, that an objection would have resulted in

23    suppression of the surveillance videos themselves.  Moreover, even if the "enhanced" version of the

24    surveillance videos had been suppressed, the non-enhanced version would remain admissible, and

25    it was the non-enhanced version that was viewed by the witnesses and police before trial (*see* 5RT

26    379).  Finally, even if the "enhanced" version of the surveillance videos had been suppressed, the

27    evidence against Craven was overwhelming.  *See supra* DISCUSSION Part A.2.  Accordingly, this

28    Court finds that the state court reasonably applied *Strickland* in rejecting Craven's claim.  Craven

United States District Court
Northern District of California

is not entitled to relief on his IAC claim relating to trial counsel's failure to object to the "enhanced" surveillance videos (claim 7), and this claim is DENIED.

### 6.    Cross-Examination of Officer Mullens

Craven claims that his counsel was ineffective for failing to cross-examine Officer Mullens on the lack of record of his receipt of surveillance photos depicting Craven.  Dkt. No. 69 at 25-26.

Officer Mullens testified at trial that during the search for the perpetrators of the robbery, he requested and received (through his work email on his work phone) photo stills from the surveillance videos concerning the robbery.  5RT 401-402.  The photos themselves were introduced into evidence.  5RT 402.  Craven contends trial counsel was ineffective for not cross-examining Officer Mullens about why there was no record of the email containing these photos.  Dkt. No. 69 at 25.

### a.    State Court Decisions

The state superior court held that Craven neither established that the prosecution failed to comply with its discovery obligations nor that there was any prejudice against him:

> . . . Claim Five involves an absence of evidence concerning when Officer Mullens received the surveillance photographs. Petitioner again refers to the post-conviction *Marsden* hearing transcript wherein, in responding to Petitioner's complaints concerning an apparent lack of cross examination at trial as to when Officer Mullen[s] received the photographs, Ms. McNamara stated that she did not cross examine on that issue because she did not have any evidence showing when he received them. Ms. McNamara further provides that she had asked the District Attorney for such evidence for six to eight weeks but was informed that such records did not exist. Petitioner asserts that the prosecution thus failed to comply with its discovery obligations pursuant to Penal Code sections 1054.1 and 1054.7, and trial counsel provided ineffective assistance by failing to request the court to instruct the jury with CALCRIM 306.

> First, Petitioner has not established that the prosecution has failed to comply with its discovery obligations because there is no indication that the records actually exist. Defense counsel requested this discovery, and the prosecution responded that the records did not exist. On this record, Petitioner had not made a prima facie case of a discovery violation or deficient performance for failing to request CALCRIM 306 or to make the appropriate motions for disclosure. CALCRIM 306 regards the untimely disclosure of evidence, but the court should not give this instruction unless there is evidence of a prejudicial violation of the discovery statute. (*See People v. Bell* (2004) 118 Cal.App.4th 249, 254-257; *People v. Cabral* (2004) 121 Cal.App.4th 748, 752-753; *People v. Saucedo* (2004) 121 Cal.App.4th 937, 942-943.) Also, while a court may make any order necessary to enforce the disclosure provisions, there is nothing

to indicate that counsel erred in failing to seek such an order because there is no evidence that prosecution failed to comply with its discovery obligations. (Pen. Code, § 1054.5, subd. (b).)

Even if Petitioner could establish deficient performance in this regard, he has failed to satisfy the prejudice prong. There being no evidence, Petitioner cannot demonstrate what that evidence would have been and what effect it would have had on his prosecution. There is also no indication that the outcome of the trial would have been any different had the jury been instructed that prosecution had failed to disclose unknown evidence. Accordingly, Petitioner has failed to demonstrate that counsel provided ineffective assistance in this regard.

Dkt. No. 73-6 at 24-25.

Craven renewed this claim in a petition for writ of habeas corpus to the California Supreme Court. Dkt. No. 73-5 at 10. The state supreme court denied the claim summarily. *Id.* at 20.

b.    <u>Analysis</u>

This Court finds that Craven has failed to show fault in trial counsel's decision not to question Officer Mullens about the lack of a record of the emailed photos or timing thereof. As the state superior court explained, the defense counsel had requested such evidence, had been told there was no record, and had not challenged that response as a discovery or other violation. Dkt. No. 73-6 at 24-25. The state superior court was reasonable in finding that Craven had not shown that there was in fact such a "record" that should have been produced. *Id.* at 24. Accordingly, Craven is unable to show fault, of any magnitude, in the absence of a "record" of the email containing the surveillance photos. As trial counsel did not know the reasons for the absence of a "record", or even whether it suggested an irregularity, she acted reasonably in not pursuing such a line of questioning.

Additionally, Craven cannot demonstrate a reasonable probability that the result of the trial would have been different had trial counsel asked Officer Mullens about proof of when he received the emailed photos. *See Strickland*, 466 U.S. at 687-88. Craven fails to show what such questioning would have elicited or that such unknown response would have resulted in the jury disbelieving Officer Mullens on any point relating to these emailed photos. Craven cannot fault trial counsel for not asking questions to which Craven does not know the answer and for which he cannot show a consequence. Applying the "'highly deferential' look at counsel's performance . . . through

United States District Court
Northern District of California

§ 2254(d)'s 'deferential lens,'" it cannot be said that the state superior court's rejection of this IAC claim was contrary to or an unreasonable application of *Strickland*. *See Pinholster*, 563 U.S. at 190, 202. The state superior court's analysis presents a "reasonable argument that counsel satisfied *Strickland*'s deferential standard," and that is sufficient to bar relief under section 2254(d). *See Harrington*, 562 U.S. at 105. Accordingly, Craven is not entitled to relief on his IAC claim relating to trial counsel's failure to cross-examine Officer Mullens on the receipt of photos (claim 8), and this claim is DENIED.

### D.    Cumulative Error

Craven claims that the cumulative effect of trial counsel's errors deprived him of a "fair trial." Dkt. No. 69 at 27-28. In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned. *See Alcala v. Woodford,* 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution). Here, however, Craven has failed to show that trial counsel's performance at any time fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 687-88. Thus, this Court finds that Craven fails to show that there are any errors to accumulate, or even if there were, that they create a reasonable likelihood of a different result. Craven therefore is not entitled to relief under the cumulative error doctrine.

### E.    No Certificate Of Appealability

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

///

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.
The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:  December 12, 2024

SUSAN ILLSTON
United States District Judge