UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KALVIN N. CRAVEN,<br><br>   Petitioner,<br><br>   v.<br><br>JANAN CAVAGNOLO, Acting Warden,[1]<br><br>   Respondent. | Case No. 20-cv-01933-SI (PR)<br><br>**ORDER DENYING HABEAS RELIEF FOR REMAINING SIXTH AMENDMENT CLAIM** |

Kalvin N. Craven, a state prisoner incarcerated at California State Prison-Solano, filed a *pro se* action for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction from Alameda County Superior Court for multiple convictions of second-degree robbery with firearm-use enhancements. On December 12, 2024, the Court issued its denial of claims in his original petition and Second Amended Petition ("SAP"), and it subsequently entered judgment. Dkt. Nos. 80, 81. Thereafter, Craven filed a motion for relief from the judgment under Federal Rules of Civil Procedure 59(e) and 60(b), stating that the Court "committed clear error during its analysis of the issue [he] raised in Claim 2." Dkt. No. 82 at 1. Specifically, Craven argued that "the Court misstated the argument that [he] raised and completely failed to address the issue that [he] actually presented to the Court in Claim 2 . . . [which was] that his Sixth Amendment right to counsel was violated due to "ex parte" communication between the trial court and the deliberating jury." *Id.* at 1-2 (citing Dkt. No. 1). On March 31, 2025, the Court granted Craven's motion for reconsideration only as to its denial of Claim 2, reopened the case, and issued an order to show cause why Craven's Sixth Amendment claim should not be granted. Dkt. No. 88. Respondent filed a second supplemental

---

[1] Janan Cavagnolo, the current acting warden of the prison where Craven is incarcerated, has been substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

answer, and Craven filed a second supplemental traverse. Dkt. Nos. 89, 90.

For the reasons discussed below, Craven's claim concerning the alleged deprivation of his Sixth Amendment right to counsel is DENIED.

## PROCEDURAL BACKGROUND

The following procedural background is taken from the Court's March 24, 2023 Order:

The original petition provides the following information: After a jury trial in Alameda County Superior Court, petitioner was found guilty of four counts of robbery and was found to have personally used a firearm in the commission of the offenses. He was resentenced on June 29, 2018, to a prison term of 28 years.

Petitioner appealed. The California Court of Appeal affirmed the conviction in 201[9], and the California Supreme Court denied his petition for review on January 29, 2020. He also filed multiple state habeas petitions in the Alameda County Superior Court that were denied in 2020.

He then filed the instant federal habeas action on March 19, 2020. His original petition has a proof of service stating that he mailed it to the Court on March 11, 2020. The petition was stamped "filed" on March 19, 2020. As a *pro se* petitioner, petitioner receives the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to a court. *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003). The original petition is deemed filed as of March 11, 2020. Petitioner alleged three claims: (1) the trial court's evidentiary ruling admitting videos from his cell phone violated due process; (2) the trial court violated his constitutional rights by engaging in "ex parte" communications with jurors during deliberations and by failing to answer a jury question about a sentence enhancement allegation; and (3) [ineffective assistance of counsel ("IAC")] claim based on trial counsel's failure to move to suppress videos obtained from petitioner's cell phone without a warrant. *See* Dkt. No. 1.

On April 14, 2020, the Court found that, liberally construed, these claims were cognizable in a federal habeas action and warranted a response. Dkt. [No.] 7 at 2.

Thereafter, petitioner moved to supplement his federal habeas petition with further argument in support of his claim that his right to due process was violated by the erroneous admission of two cell phone videos. Dkt. No. 10.

On June 5, 2020, the Court granted petitioner's motion to supplement. Dkt. No. 11. The Court noted that it would consider the supplemental argument when it came time to rule upon the habeas petition. The Court added that because the supplement contained only further argument in support of an existing claim, there would be no need to adjust the briefing schedule.

On July 17, 2020, respondent filed a response to the petition and to petitioner's request to supplement the petition. Dkt. Nos. 13, 14.

On October 13, 2020, petitioner retained Richard B. Mazer to represent him in this action. Dkt. No. 18.

After requesting several extensions of time to do so, petitioner's counsel filed a traverse on March 12, 2021. Dkt. No. 27.

On March 12, March 23, and March 24, 2021, petitioner's counsel filed motions seeking to amend the petition to assert a number of new, unexhausted claims alleging IAC and cumulative error claims. Dkt. Nos. 28-30. On April 12, 2021, respondent filed an opposition to petitioner's request to amend the petition. Dkt. No. 32.

On May 4, 2021, the Court denied petitioner's motion to amend the petition because it could not consider unexhausted claims and, thus, it determined that amendment of the petition would be futile. Dkt. No. 33 at 2. The Court further added that "[i]f petitioner has filed a new state habeas petition, petitioner shall notify the Court no later than May 14, 2021, and shall attach a copy of the state habeas petition." *Id.* at 2-3.

Thereafter, petitioner's then counsel, Mr. Mazer, informed the Court that on April 27, 2021, he filed another state habeas petition in the state superior court seeking to exhaust a number of new claims.[FN 1] Dkt. No. 34.

[FN 1:] Petitioner subsequently alerted the Court of his intent to abandon this state collateral proceeding. Dkt. No. 48.

As such, on May 6, 2021, the Court found it appropriate to sua sponte stay and abey this petition. Dkt. No. 35 at 1 (citing *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005)). The action was stayed and administratively closed. *Id.* The Court further noted that it made "no finding at this time as to the timeliness of the currently unexhausted claims." Dkt. No. 35 at 1.

On June 9, 2021, petitioner filed a motion to lift the stay along with an amended petition. Dkt. Nos. 38, 39. His amended petition has a proof of service stating that he mailed it to the Court on June 6, 2021. The petition was stamped "filed" on June 9, 2021. Because petitioner receives the benefit of the prisoner mailbox rule, the amended petition is deemed filed as of June 6, 2021. *See Stillman*, 319 F.3d at 1201. In his amended petition, petitioner lists eight IAC claims and a claim of cumulative error. Dkt. No. 39. Specifically, petitioner alleged the following IAC claims based on trial counsel's failure: (1) to object to Officer Mullen[s]'s testimony regarding his identification of petitioner; (2) to object to testimony by Officer [Mullens], who had arrested plaintiff, and to identification testimony by Officer Bergeron; (3) to be present during the readbacks of testimony requested by the jury during deliberation; (4) not to strike a biased juror who was seated on the jury; (5) to file a motion to suppress petitioner's identification at the lineup; (6) to request an opportunity to explain petitioner's absence at trial; (7) to object to the introduction of enhanced surveillance video, which lacked foundation; and (8) to conduct proper cross-

3

examination of Officer Mullens. Dkt. No. 39 at 2-7. Lastly, petitioner alleged that the cumulative effect of trial counsel's deficient performance denied him the right to a fair trial. *Id.* at 9.

On June 11, 2021, Mr. Mazer filed a motion to withdraw as petitioner's attorney. Dkt. No. 36.

On June 28, 2021, the Court granted petitioner's motion requesting that the Court reinstate his pro per status, and also granted Mr. Mazer's motion to withdraw. Dkt. No. 43. The Court deferred ruling on the motion to lift the stay and the propriety of the amended petition until it received further information about whether petitioner intended to pursue the pending state court habeas petition filed by Mr. Mazer on April 27, 2021.[FN 2] *Id.* at 1.

[FN 2:] The April 27, 2021 state habeas petition was signed by petitioner and filed with the state superior court on the same date. Thereafter, the Court received information about the status of the state habeas proceedings from Mr. Mazer and petitioner. Dkt. Nos. 46, 47, 48. Petitioner informed the Court that he wished to pursue his state habeas petition filed in the California Supreme Court on September 7, 2021, in which he was attempting to exhaust his IAC claims. *See id.* Petitioner requested that the Court continue to defer ruling on his motion to lift the stay until he received a ruling from the California Supreme Court. Dkt. [No.] 48 at 1.

On December 17, 2021, petitioner informed the Court that the California Supreme Court had denied his state habeas petition on November 23, 2021. Dkt. No. 49. He then filed another motion entitled, "Motion to Lift the Court's Stay, and Motion to Withdraw 6/09/2021 Amended Petition, to Submit Perfected Amended Petition That Is Fully Exhausted Removing Three IAC Issues," which will be construed as a motion for leave to file his SAP. Dkt. [No.] 50. As mentioned, attached to this motion is petitioner's SAP. *Id.* at 2-53. His SAP has a proof of service stating that he mailed it to the Court on December 14, 2021. The petition was stamped "filed" on December 18, 2021. Because petitioner receives the benefit of the prisoner mailbox rule, the SAP is deemed filed as of December 14, 2021. *See Stillman*, 319 F.3d at 1201. The SAP alleges the newly exhausted claims, including his cumulative error claim and his IAC claims based on trial counsel's failure: (1) to object to testimony by Officer [Mullens], who had arrested plaintiff, and to identification testimony by Officer Bergeron; (2) to file a motion to suppress petitioner's identification at the lineup; (3) to request an opportunity to explain petitioner's absence at trial; (4) to object to the introduction of enhanced surveillance video, which lacked foundation; and (5) to conduct proper cross-examination of Officer [Mullens].[FN 3:] Dkt. No. 50-1 at 2-52.

[FN 3:] The Court notes that petitioner "remov[ed] three of the IAC issues" he initially listed in his amended petition. *See* Dkt. No. 50 at 1; compare Dkt. No. 39 at 2-7 with Dkt. No. 50-1 at 2-52.

The Court thereafter lifted the stay and ordered respondent to file further briefing related to "amended petition" filed on June 6, 2021 ("June 6, 2021 amended petition"). *Id.* at 11-14.

4

> Respondent thereafter filed a supplement to their opposition to petitioner's motion to amend the petition. Dkt. No. 60. Petitioner filed a response to the supplemental opposition. Dkt. No. 61. Respondent filed a reply to petitioner's response. Dkt. No. 63. And petitioner filed a response to the reply. Dkt. No. 65.

Dkt. No. 68 at 1-4 (brackets added).

In its December 12, 2024 Order, the Court continued outlining the procedural background of this case as follows:

> On November 20, 2023, the Court granted Craven's re-filed request to augment the record with People's Exhibits 9 and 11 that were admitted in evidence at his state court criminal trial. *See* Dkt. No. 78. Craven had originally moved to augment the record with two cell phone videos and a surveillance video that were admitted in evidence at his state court criminal trial. *See* Dkt. No. 13. Respondent filed a response explaining that respondent did not have access to or control of the trial exhibits including the videos and that an order from this Court to the Alameda County Superior Court would be necessary to obtain the videos. Dkt. No. 14. Respondent submitted copies of still photos from the videos, as only still photos had been served on respondent during the state court appeal. *Id.* The Court initially denied the motion to augment the record, *see* Dkt. No. 16, but thereafter Craven moved for reconsideration of that denial, arguing for the first time that the California Court of Appeal actually did have the video exhibits when it considered his case and later returned the video exhibits to the Alameda County Superior Court, *see* Dkt. No. 23. Thus, the Court granted Craven's motion for reconsideration and gave him "[n]o later than March 12, 2021" to augment the record "by filing a copy of the video exhibits that were used at his trial and were transmitted to the California Court of Appeal for consideration in the appeal in his criminal case." *See* Dkt. No. 24 at 2. However, the Court noted that as of November 23, 2023, Craven still had not submitted the aforementioned exhibits and that he was representing himself *pro se* as his counsel withdrew from the case, at Craven's request, in June 2021. *See* Dkt. No. 78 at 2. The record showed that Craven became aware that his former counsel never submitted the exhibits even though the Court had granted him permission to do so. *See* Dkt. No. 71 at 1-2. Thus, Craven was seeking leave to "correct this error" and augment the record with People's Trial Exhibits 9 and 11. *See* Dkt. No. 78 at 2. Because respondent did not object to Craven's request, *see* Dkt. No. 74 at 2, the Court granted his re-filed motion to augment the record in this habeas action with People's Exhibits 9 and 11 no later than January 31, 2024, *see* Dkt. No. 78 at 2.
>
> Thereafter, on January 12, 2024, Craven filed a letter to the Court indicating that he was unable to augment the record because his request for People's Trial Exhibits 9 and 11 was denied by the Alameda County Superior Court. *See* Dkt. No. 79 at 1. He adds that he has "no other motions or filings in this court . . . [and] this case is fully briefed." *Id.*

Dkt. No. 80 at 7-8 (brackets in original added).

5

1    On December 12, 2024, the Court denied Craven's claims in his original petition and SAP,
2    and the case was subsequently terminated. Dkt. Nos. 80, 81.
3    On December 19, 2024, Craven filed a motion for reconsideration of the Court's denial of
4    his claim that his Sixth Amendment right to counsel was violated due to "ex parte" communication
5    between the trial court and the deliberating jury. Dkt. No. 82 at 1-2 (citing Dkt. No. 1).
6    The Court reviewed the record and confirmed that it did not consider Craven's specific
7    argument relating to the alleged Sixth Amendment violation, which was raised in his petition to the
8    California Supreme Court and found to be cognizable, *see* Dkt. No. 1 at 9, *see also* Dkt. No. 7 at 2,
9    when it denied Claim 2, *see* Dkt. No. 80 at 17-20. Thus, on March 31, 2025, the Court granted
10   Craven's motion for reconsideration only as to its denial of Claim 2, reopened the case, and issued
11   an order to show cause why Craven's Sixth Amendment claim should not be granted. Dkt. No. 88.
12   Respondent filed a second supplemental answer, and Craven filed a second supplemental traverse.
13   Dkt. Nos. 89, 90.
14   In the interim, petitioner filed a notice of appeal to the Ninth Circuit Court of Appeals, *see*
15   Dkt. Nos. 86, 87, which the Ninth Circuit dismissed for lack of jurisdiction pursuant to Ninth Circuit
16   Rule 3-6(b) pending the ongoing action in this Court, *see* Dkt. No. 91. On May 21, 2025, the Ninth
17   Circuit issued its mandate. Dkt. No. 92.
18   Also pending before the Court are Craven's application for a certificate of appealability and
19   motion for leave to proceed *in forma pauperis* on appeal. Dkt. Nos. 83, 85. The matter is now ready
20   for decision.

**FACTUAL BACKGROUND**

The following background relating to the Sixth Amendment claim, the only remaining issue relating to Claim 2, is taken from the Court's December 12, 2024 Order:

B.   "Ex Parte" Communications with Jurors [Claim 2]

Craven contends the trial court violated California Penal Code § 1138 because it had

"ex parte" communications with the jurors during deliberations and did not answer their question concerning an enhancement. Dkt. No. 1 at 9; *see* Dkt. No. 69 at 6. He also contends that this "ex parte" communication violated his constitutional rights. Dkt. No. 1 at 9. He argues that this error calls for a reversal of the judgment in its entirety. *Id.*

1. California Court Of Appeal's Decision

The state appellate court described the relevant facts as follows:

During deliberations, the jury requested a readback of Officer Mullens's testimony and a replay of two videos. At 11:08 a.m. on Friday, December 15, 2017, the court and counsel met to discuss the jury requests and the logistics for the replay of the videos. Counsel stipulated that the readback and presentation of the videos would be done in their absence.

At 2:47 p.m. that same day, the jury submitted jury request number 3, then recessed for the evening at 3:47 p.m. Jury request number 3 asked for a readback of the testimony "Re: Gun" from victims Ly, Li and Yung.

On Monday, December 18, 2017, jury deliberations resumed at 9:36 a.m., and at 9:41 a.m., the court and counsel discussed jury request number 3 and counsel stipulated that the readback could be done in their absence. Subsequently, in the absence of counsel, the trial court informed the jury that the court reporter had assembled the testimony and would commence the readback. The record reflects the following colloquy before the readback occurred:

"THE COURT: Good morning, everybody. Good to see you.

"So we have received a request that you submitted regarding the testimony that you want to hear. Madam Court Reporter has been able to locate it. So just as the last time, we'll let you have the courtroom as part of your deliberations, and the testimony will be read to you, okay? The record should reflect both attorneys were here just moments ago, and they have waived their appearance to be present [sic].

"And as I said last time, this is considered part of your deliberations. So with that, I will leave you with Madam Reporter, who will read the testimony to you, okay?

"JUROR 12: So if we've come to a decision on the charges but we got hung on the enhancement, what would happen?

"THE COURT: You would—well, at some point, if you felt that you needed to inform me that you had reached a certain point with regard to that question, you would let me know. Okay?

"JUROR 12: Okay.

7

> "THE COURT: So let me do this: Before you go on, why don't you write these down, perhaps, and that may give you a better—since the attorneys aren't here, I don't want to go too far down that road. I don't want to preclude you from asking those questions. So why don't we read this testimony, and after that's done, the attorneys will be back. Write out the questions for me, and then we'll address them, okay?
>
> "JUROR 12: Thank you.
>
> "THE COURT: I'm going to leave you with Madam Reporter. And when you are done, don't go back up. Stay here so we can address that point, okay? All right. Thank you."
>
> At 10:17 a.m., following the readback, the jury returned to the jury room to deliberate. At 10:31 a.m., the jury reported that verdicts had been reached. No further mention was made of deadlock on the enhancements. The verdicts were returned.
>
> [*People v.* ]*Craven*, [No. A154783,] 2019 WL 5704628, at *5 [(Cal. Ct. App. Nov. 5, 2019)]. The state appellate court found that there was no improper communication outside defense counsel's presence. *Id.* at *6. Counsel waived their right to be present after the readback commenced. *Id.* The trial court further did not provide a substantive answer to Juror 12's question. *Id.* The state appellate court noted that the jury did not follow through with its question on the enhancement simply because it reached a verdict instead. *Id.*
>
> Even assuming some technical error occurred in communications between the trial court and the jury, the state appellate court found that it was harmless beyond any reasonable doubt. *Id.* The trial court's comments were a neutral effort to address any question the jury might have and to make sure counsel was informed and could provide input. *Id.* The state appellate court also concluded that there was no indication the jurors had any doubt or disagreement regarding the enhancements by the time the verdict was reached. *Id.*

Dkt. No. 80 at 17-18 (brackets for [sic] in original and all other brackets added).

Prior to the above interaction, the trial court provided its jury instructions which included second-degree robbery, petty theft, and additional allegations related to the firearm. 6RT 499. There were also other juror questions about the firearm instructions, as shown in the following communication between the trial court and the jury:

> JUROR 5: I had a couple questions: I got a little bit confused when you were giving the instructions about the crime related to having a firearm. It seemed like you were explaining one charge where it just had to be -- it was either you or the person you

8

were with had the firearm, but then, as you were going on, then it says that the person -- it would only apply if a person was essentially holding the gun.

THE COURT: I think I know what you're getting at.

JUROR 5: So I got a little confused, and maybe it was coming too fast.

THE COURT: Let me talk to the attorneys, and maybe we can clarify that before you go upstairs.

JUROR 5: And then also, it came up in the closing arguments about whether the gun was real or not. That seems like it was besides the point, because the victims said it was real. So is that something we have to consider?

THE COURT: Let me also talk to the attorneys about that.

[The jurors ask several more unrelated questions.]

(Whereupon an off-the-record discussion was had between Court and Counsel in chambers.)

THE COURT: Okay. Back on the record. Let me try to answer your question, Juror No. 5, and for everybody else's benefit as well. So with regard to the clauses, we call them *"enhancement allegations"* okay? There are two that are involved here. One concerns what we call the personal use of a firearm. So hypothetically, if someone were engaged in a crime, robbery, or burglary, and they had a firearm in their hand, and they went into someone's house with that gun, or they committed a robbery with that gun in their hand, okay, and pointed it at somebody, if you believe that that was true, all right, and found the facts necessary to believe that that was in fact the case, that person could be subject to or would be subject to a finding that they personally used a firearm in the commission of the crime, okay? On the other hand, if you have two or more people who may be jointly involved in the commission of a crime, hypothetically a robbery three people are involved in committing a robbery -- and one of those people has a gun in their hand, and let's say a second person restrains another person or reaches into their pocket to take something out while the other person holds the gun, that person who does not have the gun, but the who participated in the crime, could be or would be subject to a finding that they were armed. So the difference is "use" versus "arming." The "use" refers to specifically a person, personally, specifically, having the weapon in their hand, using it in the commission of the crime, as opposed to "arming," which involves a person who is involved in the commission of a crime in which someone else is using the gun. They're considered to be "armed." So that's the distinction. I hope that somewhat clarifies it. And you can refer to the instructions. There are two instructions that discuss exactly that difference, somewhat in legalese. But that's the distinction. Okay?

JUROR 12: And we're being asked to rule on both of those findings?

THE COURT: You're going to be asked to consider what you think the facts have or have not shown with respect to those allegations, okay? So that would be a question

9

for you. Yes, sir.

[The jurors ask additional unrelated questions.]

JUROR 5: Sorry. You didn't discuss the discussion about whether or not the firearm was real.

THE COURT: I'm going to refer you to the instruction that describes what a firearm is. If you have a question later on, certainly feel free to write it and send it down, okay? So I will send you up with the jury instructions and the exhibits, okay? Before I do that, technically, I need to swear -- or Madam Clerk needs to swear Deputy Posey in, because he's responsible for you during your deliberations to make sure that you are taken care of.

6RT 506-512 (brackets and emphasis added).

**LEGAL STANDARD**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

10

principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id*. at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). Craven presented his Sixth Amendment claim in his state habeas petition filed in the California Supreme Court, which was rejected summarily by the state supreme court. *See* Dkt. No. 73-5 at 3-16 (California Supreme Court Habeas Petition dated Aug. 26, 2021), Dkt. No. 73-5 at 20 (California Supreme Court's Summary Denial dated Nov. 23, 2021).

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. However, § 2254(d) generally applies to these unexplained decisions. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. *See Plascencia v. Alameida*, 467 F.3d 1190, 1197-98 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). When confronted with a state court's summary denial of a claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at

853. The federal court must still apply the deference required by § 2254(d)(1). *See Harrington*, 562 U.S. at 98-100. Thus, in conducting this review, the court must determine: "(1) 'what arguments or theories supported or could have supported the state court's decision,' and (2) 'whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court.'" *Cook v. Kernan*, 948 F.3d 952, 966 (9th Cir. 2020) (quoting *Harrington*, 562 U.S. at 102). Under § 2254(d)(1), a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); Williams, 529 U.S. at 402-04, 409.

Assuming there is a constitutional error, habeas relief is warranted only if (1) the constitutional error at issue is structural error; (2) where the state court made no harmless error determination, the error had a "substantial and injurious effect or influence in determining the jury's verdict" under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); or (3) where the state court did make a harmless error determination, the reviewing court determines both that the error had a "substantial and injurious effect or influence in determining the jury's verdict" under *Brecht* and that the state court's finding of no prejudice was an unreasonable application of Supreme Court precedent under § 2254(d)(1). *See Brown v. Davenport,* 596 U.S. 118, 133-34 (2022).

**DISCUSSION**

In Claim 2, Craven contends that his Sixth Amendment right to counsel was violated because of the trial court's "ex parte" communication with jurors before their requested readback, and the trial court's subsequent lack of notification of counsel. Dkt. No. 1 at 9. "The 'Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings.'" *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). A trial would be "presumptively unfair . . . where the accused is denied the presence of counsel at 'a critical stage,'" a phrase the Supreme Court used "to denote a step of a

1    criminal proceeding, such as arraignment, that held significant consequences for the accused." *Bell
2    v. Cone*, 535 U.S. 685, 695–96 (2002) (footnote omitted). Prejudice is presumed when defense
3    counsel is absent during a "critical" stage in the proceeding. *United States v. Cronic*, 466 U.S. 648,
4    661 (1984).

5    The government argues that assuming, *arguendo*, the jury readback constituted a "critical
6    stage" of the proceeding, counsel had stipulated beforehand that any readback could be done in their
7    absence and thus Craven's Sixth Amendment right was not implicated or infringed. Dkt. No. 89 at
8    3. Specifically, Craven argues that his right to counsel was denied during "jury deliberation." Dkt.
9    No. 90 at 2. However, the record shows that defense counsel was present for the jury deliberation
10   phase of trial and was present just before the "ex parte" communication at issue. 6RT 515. Craven's
11   characterization of the alleged violation is overbroad as the record shows he was afforded an
12   attorney during this phase. *Id.* Neither characterization of the issue is on point. While the "ex
13   parte" communication in question occurred right after readback "Re: Gun" during which counsel
14   waived presence, the Court finds that defense counsel did not clearly waive presence as to this
15   *specific* "ex parte" communication—when a juror spontaneously asked the trial court a question in
16   the absence of counsel. This Court will address the alleged violation of Craven's Sixth Amendment
17   right to counsel specifically as a result of the "ex parte" juror question and subsequent lack of
18   notification of counsel.

19   Here, the record establishes that the trial court's practice was to inform counsel of all juror
20   requests before drafting answers or ordering readback. 6RT 507-508, 515-516. Consistent with
21   that practice, the trial court invited the jury to submit questions or requests in writing, so that the
22   parties and the trial court could discuss possible answers, as was previously done. 6RT 507-508,
23   515-516. Juror 12's question ("So if we've come to a decision on the charges but we got hung on
24   the enhancement, what would happen?") reasonably pertains to the firearm enhancements,
25   especially since the trial court previously referred to them as **"enhancement allegations"** in
26   responding to another juror's prior question about "the crime related to having a firearm." 6RT 506,
27   509, 515 (emphasis added). The trial court reporter's description of the readback that followed Juror
28   12's question was described as "all the testimony from the victims regarding the gun," 6RT 516,

including a readback of the testimony "Re: Gun" from victims Ly, Li and Yung, *see Craven*, 2019 WL 5704628, at *5. The trial court did not provide nor refuse to provide a substantive answer to Juror 12's hypothetical question. 6RT 515-516. Instead, the trial court invited the jury to confer in the jury deliberation room following readback then produce a written request for the purposes of discussion with counsel and the trial court. *See* Dkt. No. 12-4 at 8. The record reflects that the jury decided to continue to deliberate following readback rather than produce a written request. 6RT 515-516. No further written request was forthcoming before the jury reached their verdict shortly thereafter. 6RT 516-519. Nor was there any further mention of a deadlock on the enhancements prior to the verdicts being returned. 6RT 516-519.

There is no Supreme Court precedent that holds juror questions—even those that are "ex parte"—are considered to be a "critical stage" for the purposes of a Sixth Amendment violation analysis. In addition, Craven has failed to cite any United States Supreme Court case holding that a defendant's Sixth Amendment right to counsel is violated when a judge, who is posed with an oral jury question outside the presence of counsel, invites the jury to make a written request for the purposes of discussion with counsel. Although defense counsel plays a crucial role in formulating mid-deliberation communication to the jury by the judge and "[t]he defendant's or attorney's presence may also be an important opportunity 'to try and persuade the judge *to* respond", there is no precedent to indicate the facts in this case, where the judge simply directed the jury to submit their questions in writing, or an analogous situation, is a "critical stage" nor a violation of the Sixth Amendment right to counsel. *See Musladin v. Lamarque*, 555 F.3d 830, 842 (9th Cir. 2009) (quoting *United States v. Barragan–Devis,* 133 F.3d 1287, 1289 (9th Cir. 1998)). Even in cases where a trial court provided a written response to a jury's question mid-deliberations and without counsel's input, the Ninth Circuit could not find that the state court's application of law was contrary to or an unreasonable application of the *Cronic* standard. *See Musladin*, 555 F.3d at 842-43 (finding no habeas relief warranted based on claim that trial court received juror question mid-deliberations and, without consulting counsel, responded by reminding jury of its original instructions, instructions to which petitioner's counsel had already agreed). The Supreme Court has repeatedly held that it is not "an unreasonable application of" "clearly established Federal law" for a state court to decline to

14

apply a specific legal rule that has not been squarely established by this Court. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Therefore, the state court's decision here cannot be an objectively unreasonable application of Supreme Court authority, thus a writ is not appropriate. *Plascencia*, 467 F.3d at 1198; *Himes*, 336 F.3d at 853.

Assuming, *arguendo*, that Craven's aforementioned Sixth Amendment violation claim amounted to a constitutional error, habeas relief is warranted only if (1) the constitutional error at issue is structural error; (2) where the state court made no harmless error determination, the error had a "substantial and injurious effect or influence in determining the jury's verdict" under *Brecht*; or (3) where the state court did make a harmless error determination, the reviewing court determines both that the error had a "substantial and injurious effect or influence in determining the jury's verdict" under *Brecht* and that the state court's finding of no prejudice was an unreasonable application of Supreme Court precedent under § 2254(d)(1). *See Brown*, 596 U.S. at 133-34. The Supreme Court has also held that "ex parte" communication can be considered harmless error in some circumstances, but the trial court generally should disclose such communication to counsel when it relates to some aspect of the trial. *See Rushen v. Spain*, 464 U.S. 114, 117 (1983).

Here, the state appellate court reasonably applied the harmless error standard of *Chapman v. California*, 386 U.S. 18, 24 (1967), in finding any "technical error" in the "ex parte" communication between the trial court and jury harmless beyond a reasonable doubt. *See Craven*, 2019 WL 5704628, at *6, *see Davis v. Ayala*, 576 U.S. 257, 269-70 (2015). Even if the jury had been instructed on the appropriate procedure for a deadlock, nothing in the record indicates that the outcome would have been different, as there is nothing to suggest a deadlock ever occurred. *See* RT 549 (counsel declining polling of jury). To the contrary, the record reflects that after the jury's "ex-parte" communications with the trial court, the jury chose declined to submit a written request, continued its deliberations, and reached a verdict without further encountering any deadlock. A fairminded jurist could agree with the state appellate court that any error was harmless beyond a reasonable doubt. *See Ayala,* 576 U.S. at 269-70. And for the same reasons, Craven fails to show However, Craven fails to show how the presumed error "had substantial and injurious effect or influence in determining the jury's verdict", particularly considering the readback "Re: Gun", which

15

1  was potentially relevant to Juror 12's hypothetical question, was provided to the jury moments after
2  the "ex parte" communication. *See Brecht*, 507 U.S. at 637. Accordingly, the Court finds any
3  presumed error harmless.

4      Craven has not shown a violation of his Sixth Amendment right to counsel based on the "ex
5  parte" communication between the trial court and Juror 12. In the absence of clear Supreme Court
6  authority, the federal court has no basis for finding that the state court's rejection of this claim was
7  an objectively unreasonable application of clearly established Supreme Court law for purposes of
8  28 U.S.C. § 2254(d)(1). Craven has failed to cite any United States Supreme Court case holding
9  that a defendant's Sixth Amendment right to counsel is violated when a judge invites the jury to
10 make a written request for the purposes of discussion with counsel, before responding to a jury
11 question. Moreover, Craven does not show that any presumed error "had substantial and injurious
12 effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637. Accordingly, Craven
13 is not entitled to the writ on this claim.

## CONCLUSION

17     For the foregoing reasons, the Court DENIES habeas relief for the remaining Sixth
18 Amendment claim. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is
19 not a case in which reasonable jurists would find the district court's assessment of the remaining
20 Sixth Amendment claim "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thus,
21 the Court also DENIES Craven's application for a certificate of appealability and motion for leave
22 to proceed *in forma pauperis* on appeal. Dkt. Nos. 83, 85. The clerk shall close the file.

24     **IT IS SO ORDERED**.
25     Dated: May 30, 2025

                                         SUSAN ILLSTON
                                         United States District Judge